432 So.2d 1352 (1983)
James J. HOCTOR, a Minor, by and through His Parents and Natural Guardians, Michael J. HOCTOR and Lorraine B. Hoctor, and Michael J. Hoctor and Lorraine B. Hoctor, Individually, Appellants,
v.
Brian K. TUCKER, etc., et al., Appellees.
No. 81-1144.
District Court of Appeal of Florida, Fifth District.
May 12, 1983.
Rehearing Denied June 21, 1983.
Robert J. Telfer, Jr., of Cianfrogna, Telfer & Evans, P.A., Titusville, for appellants.
Janet R. DeLaura of Smalbein, Eubank, Johnson, Rosier & Bussey, P.A., Rockledge, for appellees.
ORFINGER, Chief Judge.
This is an appeal by plaintiffs below from a final judgment entered on a jury verdict for the defendants in a personal injury suit. We reverse.
*1353 Plaintiff was a passenger in an automobile driven by Brian Tucker and owned by Charles Tucker (the Tucker vehicle) which ran into the rear end of a motor vehicle operated by defendant Helen Maliszewski. Plaintiff alleged that the Maliszewski vehicle had stalled on the dark and rainy highway and that Mrs. Maliszewski was negligent in permitting it to remain on the roadway without lights. Whether the Maliszewski car had lights on while stalled or was dark until just before impact became a major issue of the trial.
Over objection, appellee's counsel was permitted to ask Brian Tucker[1] what he had told the investigating officer concerning the tail lights on the Maliszewski vehicle. The investigating officer was later permitted to testify, over appellants' objection, to what Brian Tucker told him, and this recitation essentially contradicted Brian's testimony. To tie the knot tighter, the investigating officer was permitted to testify that no statement was made to him by other witnesses at the scene which would contradict Mrs. Maliszewski's statement that her lights were on.
Appellant contends that statements made by Brian Tucker to the investigating police officer are privileged under section 316.066(4), Florida Statutes (1981), which says, in pertinent part:
All accident reports made by persons involved in accidents shall be without prejudice to the individual so reporting and shall be for the confidential use of the department or other state agencies having use of the records for accident prevention purposes, except that the department may disclose the identity of a person involved in an accident when such identity is not otherwise known or when such person denies his presence at such accident, and except that the department shall disclose the final judicial disposition of the case indicating which if any of the parties were found guilty. No such report shall be used as evidence in any trial, civil or criminal, arising out of an accident ...
Appellee contended at trial, and asserts here, that the privilege is personal to the person making the report and cannot be invoked by the plaintiff.
Under the statute, reports, whether oral or written, made to a police officer investigating an accident by a person involved in the accident, are privileged as to the person making the report and cannot be used in evidence against that person. Stevens v. Duke, 42 So.2d 361 (Fla. 1949). Appellee would have us stop there, but the statute does more. It provides that the required reports "shall be for the confidential use of the department or other state agencies having use of the records for accident prevention purposes ...," and prohibits the use of the report as evidence in any trial, civil or criminal. In Stevens v. Duke, supra, the Supreme Court ruled inadmissible the statements made by the driver of plaintiff's vehicle to a police officer who took the statement at the request of the investigating officer. Although the Supreme Court did not discuss the issue in precise terms, it held that the testimony was inadmissible as a privileged statement under the statute in question here, and thus implicitly held that the plaintiffs, although not the makers of the statement, had standing to raise the question of privilege.
Thus it appears that the privilege of the statute extends to all persons within its ambit, those "involved" in the accident,[2] *1354 because the statute is not only for the benefit of the person making the report but is for the benefit of the public to enable the motor vehicle department to collect data on the cause and frequency of accidents, and use that information for accident prevention purposes.[3] See Sprague v. Brodus, 245 Iowa 90, 60 N.W.2d 850 (Iowa 1953), where the Supreme Court of Iowa reaches the same conclusion under an Iowa statute almost identical to the one in question here.
Having determined that it was error to permit the testimony of Brian Tucker and the investigating officer as to the report of the accident made by Brian Tucker, we must determine if the error was prejudicial, because if it was not, the error is not reversible. See Williams v. Scott, 153 So.2d 18 (Fla. 2d DCA 1963). Whether the Maliszewski vehicle had its lights on prior to the accident was a crucial point in the determination of the question of her negligence. Because of the conflicting evidence on this point, it cannot be said that the improper testimony was harmless. Herbert v. Garner, 78 So.2d 727 (Fla. 1955).
We cannot agree with the dissent that there is no contradiction between Brian Tucker's testimony and that of the police officer. The very purpose of questioning Brian about what he told the officer was to substantially demonstrate to the jury that the lights were on and that Brian didn't see them until too late to avoid hitting the other car. Thus, this testimony was important not to impeach Brian, but to add credence to the later testimony of Mrs. Maliszewski that her lights were on. The dissent characterizes Brian's testimony as never indicating that "before the collision he saw the Malaszewski vehicle at a time when its lights were off." Yet, Brian's entire testimony makes it clear that on the dark and rainy highway, he saw nothing until "all of a sudden red lights flashed in front of me and I put on my brakes and hit." He specifically denied seeing any vehicle in the roadway prior to the lights flashing on "at the last instant." Another witness, a passenger in Brian's car, testified that when he heard Brian exclaim "Oh, no" he looked up and saw two red lights flash on and stay on until the two vehicles collided.
So, we see a definite significance in the desire of the defense to introduce the officer's testimony. If, as the dissent indicates, it was proper to introduce that testimony to impeach Brian's earlier testimony as a prior inconsistent statement (a point we need not decide now), it was not proper to do so without first giving Brian an opportunity to explain or deny the prior statement. Before a prior inconsistent statement may be admitted in evidence, the witness allegedly making the statement must be asked if he made the statement and be given the opportunity to explain, admit or deny making the statement. Section 90.614(2), Florida Statutes (1981); Hutchinson v. State, 397 So.2d 1001 (Fla. 1st DCA 1981); Studstill v. State, 394 So.2d 1040 (Fla. 5th DCA 1981). The same rule applied prior to the adoption of the Florida Evidence Code. See Hancock v. McDonald, 148 So.2d 56 (Fla. 1st DCA 1963). Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), does not contradict that view. In Harris, the court held that the unconstitutionally obtained statements of the defendant were admissible to impeach defendant's in-court contradictory testimony after defendant had first been asked if he had made the statements and had been given an opportunity to admit, deny or explain *1355 them. This procedure was not followed here.
The factual dispute here is similar to that found in Herbert v. Garner, supra, where the court held that permitting a witness to testify about a statement he overheard the defendant make to the investigating officer about defendant's observation of plaintiff's blinker light, was reversible error because there was a factual conflict as to whether plaintiff's blinker light was on and whether defendant saw it. The testimony was not considered harmless there, nor can we consider it so here.
The final judgment is reversed and the cause is remanded for a new trial.
REVERSED and REMANDED.
SHARP, J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
Plaintiff was a passenger in a vehicle operated by Brian Tucker when Tucker drove into the rear of the Maliszewski vehicle that was disabled and stopped on the highway. Plaintiff, seeking to prove that Maliszewski was negligent in not displaying lights on the disabled vehicle, called Brian Tucker, who testified, "and before I knew it all of a sudden red lights flashed in front of me and I put on my brakes and hit [the rear of the Maliszewski vehicle]." Brian further testified that he did not see any vehicle or anything in the road ahead of him until the red lights suddenly flashed and that occurred when he was 100 to 110 feet from the Maliszewski vehicle. Defense counsel on cross-examination asked Brian, "What did you tell him [the investigating police officer] about the lights?" Brian answered, "I told him they weren't on and all of a sudden they flashed on." Defense counsel on cross-examination of the investigating police officer asked, "What did Brian Tucker tell you about the lights on the [Maliszewski] vehicle, if you remember?" Answer: "That he saw them but he saw them too late." To another question the police officer answered, "All I recall him saying was that one second he didn't see the car or the lights and the next second he saw the lights and the car. He told me it seemed to suddenly appear."
On appeal plaintiff alleges, because of the evidence exclusionary rule contained in section 316.066(4), Florida Statutes (1981), it was reversible error to permit defense counsel to cross-examine Brian as to his statement to the police officer and to cross-examine the police officer as to Brian's statement to the officer.
I see no basic inconsistency in these statements, no contradiction of Brian by the police officer, and no harmful error. Brian in effect said he did not see the Maliszewski vehicle or any lights on it until, at a point 100 to 110 feet from it, the red lights on the Maliszewski vehicle suddenly appeared. Notwithstanding the arguable implication of his statement that the lights were not "on" and flashed "on," Brian did not ever state that before the collision he saw the Maliszewski vehicle at a time when its lights were off. Neither did the police officer testify that Brian had previously said to the contrary. Since Brian did not see anything until he saw the lights, regardless of how he expressed himself, he did not, and probably could not, distinguish as to whether the lights had been off and that he saw them at the moment they first came on or whether they had been on and he suddenly noticed them. He did not say he could make, and was making, this distinction. Therefore, first, Brian Tucker's statements about what he told the police officer and the police officer's statements appear consistent with Brian Tucker's eye-witness testimony elicited by the plaintiff's counsel on direct examination. A contradiction between Brian's statement and the police officer's statement is not created by what "another witness, a passenger in Brian's car," testified to. Secondly, even if Brian Tucker's testimony on cross-examination as to what he told the police officer might imply that the Maliszewski vehicle's lights had been off and only came on when he saw them, this particular testimony is not only harmless to plaintiff-appellant, it is far more favorable to plaintiff than was Brian's *1356 testimony on direct examination. This is so because the plaintiff was seeking to establish that the Maliszewski vehicle's lights were off. Thirdly, to the extent that the reference to Brian's statement to the police officer (by either Brian or the police officer) constituted contradiction and impeachment of Brian's testimony on direct examination I would construe the statutory exclusion from evidence to not apply to impeachment for the same reason that the U.S. Supreme Court in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971),[1] declined to extend to impeachment the rule excluding unconstitutionally obtained self-incriminating statements of an accused from admissibility in the prosecutor's case in chief. The beneficial purpose of this statute can be achieved, just as the constitutionally mandated requirements of the Miranda warnings are achieved, without permitting an exclusion to thwart truth-seeking at trials by preventing cross-examination as to, and admissibility of, prior inconsistent statements offered to impeach false testimony.
In summary, the violation of the exclusion in section 316.066(4), Florida Statutes (1981), to the extent that it did not contradict or impeach Brian but produced testimony more favorable to the plaintiff, was harmless error; on the other hand, to the extent the violation did contradict and impeach I would, as per Harris, hold impeachment to be an exception to the statutory exclusion.
I do not cite Harris as in any way relating to the doctrine of the Queen's case,[2] as implied in the majority opinion, but as an analogy where a rule excluding relevant evidence for constitutional purposes was held to not bar its use for impeachment purposes because of the great value that impeachment by self-contradiction has to the truth seeking function in our trial system. Justice is served by ascertaining the truth. Truth is ascertained from evidence. Cross-examination is the greatest invention the judicial process has ever devised for the ascertainment of truth. All probative evidence should be admitted, and exclusions from evidence and limitations on the proper use of cross-examination should be few and narrowly construed. For these reasons I would affirm.
NOTES
[1] The Tuckers were originally parties defendant in the action, but had been dropped by the time the case came to trial.
[2] Several Florida cases have apparently so held without discussing the point. In Wise v. Western Union Telegraph Co., 177 So.2d 765 (Fla. 1st DCA 1965), the court said that the privilege of the statute is extended to statements which have some reasonable bearing upon an investigation properly undertaken by the investigating officer and must be made by a person in some way "involved" in the accident, and must be in some way an accident report. The case was not decided on that issue, however, because the court held that the statements in question were made by a person who came upon the scene later, thus not "involved" in the accident, so those statements made later to the police officer were admissible. In Wiggen v. Bethel Apostolic Temple, 192 So.2d 796 (Fla. 3d DCA 1966), quashed on other grounds, 200 So.2d 797 (Fla. 1967), the court explicitly held that the privilege could be claimed by a person involved in the accident, although not the person making the report. Southern Life and Health Insurance Company v. Medley, 161 So.2d 19 (Fla. 3d DCA 1964), is not helpful here, because the question there was whether a party to the action, not the person making the report, could waive the privilege of the statute. Since the court found there was no waiver, it was not necessary to decide if there could be a waiver.
[3] See section 316.068, Florida Statutes (1981), pertaining to accident report forms, and section 316.069, Florida Statutes (1981), authorizing the Department to tabulate and analyze accident report forms and publish information based thereon.
[1] See also Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).
[2] The rule established in Queen Caroline's Case, 2 Brod & Bing 284, 286-90, 129 Eng.Rep. 976, 11 Eng.Rul.C. 183 (1820), is to the effect that a witness cannot be contradicted concerning his own prior inconsistent statement unless the witness is first afforded an opportunity to explain or deny it. This is an ancient rule of fairness to witnesses and is the historical basis for section 90.614, Florida Statutes (1981). This rule of evidence is not only inapposite to the point but is also inapplicable here for many reasons. (1) As explained above no inconsistency exists, so the doctrine does not apply. (2) The defense question to Brian referring to the possible inconsistent statement itself contained an adequate reference to the time, place and circumstances to satisfy the doctrine and statute because it directed Brian to his statement to the investigating police officer at the time and place of the accident. (3) At trial there was no specific objection on this ground as required by the contemporaneous objection rule and any violation of section 90.614, Florida Statutes (1981), was not preserved for, or argued on, appeal.