485 So.2d 1357 (1986)
Christopher L. THORNES, Appellant,
v.
STATE of Florida, Appellee.
No. BE-208.
District Court of Appeal of Florida, First District.
April 1, 1986.
*1358 Michael E. Allen, Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Barbara Ann Butler, Asst. Atty. Gen., Jacksonville, for appellee.
ZEHMER, Judge.
Appellant, Christopher L. Thornes, was charged with second degree murder as the result of shooting his girlfriend, Brenda Stephens, with a pistol. Following a jury trial, Thornes was convicted of manslaughter and sentenced to five years in prison. Finding error in certain rulings during trial, we reverse and remand for a new trial.
Appellant first argues that the trial judge erred in excluding from evidence the prior inconsistent statement of the purported sole eyewitness. At trial, Andrew Stephens, the victim's eight-year-old son, testified for the state that he saw Thornes approach his mother with a pistol in her living room and say, "I ought to kill you," before intentionally shooting her. On cross-examination, defense counsel asked Andrew if he remembered seeing Frankie Mae Thornes, appellant's mother, shortly after the shooting. Andrew said he recalled seeing her; and, later in his testimony, when asked if he spoke to her about the shooting, he said, "I didn't even talk to her."
Mrs. Thornes was called as a defense witness. She testified that immediately after learning of the shooting she went to the victim's apartment. From there she went to the home of Paulette Miller, who lived closeby, where she found Andrew and his younger sister, Sherry. She further testified:
Q. Was Andrew there?
A. Yes, ma'am.
Q. And was Sherry there?
A. Yes, ma'am, both of them.
Q. Did you talk to Andrew?
A. Yes, ma'am.
Q. What did Andrew tell you?
A. I asked him what happened and he said Chris shot my momma. I said where were you?
MR. DOUGLAS: Your Honor, I object to the hearsay nature of this.
THE COURT: I will sustain your objection.
MISS FINNELL: Your Honor, may counsel approach the bench?
THE COURT: No, ma'am; you may not. What is your problem?
MISS FINNELL: Andrew has indicated that he saw Mrs. Thornes but didn't speak with her. The statement that Andrew made was made immediately after the event. He was excited after the event and therefore is an exception to the hearsay. It is also impeachment of Andrew's testimony.
THE COURT: I will permit the answer to stand that she spoke with him. I will sustain the objection as to anything said.
Defense counsel then proffered Mrs. Thornes' testimony that Andrew told her he was in the bedroom with Sherry at the time of the shooting, meaning that he could not have seen the shooting as he had testified at trial.
We agree with appellant that the trial judge erred in refusing to admit Mrs. Thornes' proffered testimony. Section 90.608(1)(a), Florida Statutes (1983), recognizes impeachment by prior inconsistent statement. Although the proffered testimony was hearsay, it was nevertheless admissible, not to prove the truth of Andrew's statements, but as proof that he made the statement. Breedlove v. State, 413 So.2d 1 (Fla. 1982), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982).
The state argues that section 90.614(2), Florida Statutes (1983), bars the admissibility of the proffered testimony because Andrew was not afforded the requisite opportunity to explain or deny his prior inconsistent statement. Hutchinson v. State, 397 So.2d 1001 (Fla. 1st DCA 1981). *1359 No doubt the predicate for impeaching Andrew was not laid as artfully as some might prefer, but the occasion of the prior inconsistent statement was sufficiently identified at trial to permit Andrew to explain any statement he made at that time. Since Andrew simply denied talking to Mrs. Thornes, the fact that defense counsel did not thereafter persist in questioning Andrew about the substance of the alleged prior inconsistent statement does not require the exclusion of the proffered testimony under section 90.614(2).
Appellant next argues that the trial judge erred in refusing to allow him, during his redirect examination, to testify as to Andrew's whereabouts at the time of the shooting. Appellant testified on direct examination that the shooting occurred when the gun accidently discharged, and described his version of the sequence of events. On cross-examination, the prosecutor asked Thornes various questions about the circumstances of the shooting, and then asked:
Q. Now, isn't it true that you actually did exactly what Andrew Stephens said, pointed the gun at shoulder level and shot Brenda Stephens in the face.
A. No, it's not.
On redirect, defense counsel asked appellant where Andrew was at the time of the shooting. The prosecutor objected, and the court disallowed the question on the grounds that it was beyond the scope of direct examination.
A party may examine a witness on redirect to rebut, explain, qualify, or limit testimony elicited on cross examination. Hinton v. State, 347 So.2d 1079 (Fla. 3d DCA 1977). The fact that appellant made no mention of Andrew or Andrew's testimony during direct examination is not a proper basis for excluding the testimony on redirect because the prosecutor's specific reference to Andrew's version of the events opened the door to this line of questioning. The scope of redirect examination rests largely in the discretion of the trial judge; but when a criminal defendant has taken the stand, the trial judge should give broad leeway to the scope of redirect examination. Thornes' excluded testimony related to the critical issue of whether or not the prosecution's purported sole eyewitness was present at the scene of the shooting. This testimony was competent proof of a relevant and material fact and was not cumulative. § 90.608(1)(e), Fla. Stat. (1983). Exclusion of this testimony was an abuse of discretion.
Although having succeeded in excluding Mrs. Thornes' testimony regarding the content of Andrew's statement to her, the state nevertheless called Paulette Miller as a rebuttal witness to testify that Mrs. Thornes did not enter her apartment and talk with Andrew following the shooting, as she had testified. On cross-examination, the court refused to allow defense counsel to show that Miller was then actively involved in a pretrial intervention program administered under the state attorney's office. Appellant's third point argues error in this ruling because this fact shows Miller's bias and tendency to testify more favorably to the prosecutor, who then had the power to reinstate the criminal prosecution against her. A party may attack the credibility of a witness by showing that the witness is biased. § 90.608(1)(b), Fla. Stat. (1983). The right of a defendant to cross-examine a prosecution witness about actual or threatened criminal investigation against that witness to show bias or self-interest is well-established. See, e.g., Causey v. State, 484 So.2d 1263 (Fla. 1st DCA 1986). Contrary to the state's argument, there is no requirement, as a predicate to admissibility of this testimony, to show that the state and the witness have first entered into an agreement providing for the manner in which the witness will testify and the effect of such testimony on any future action which the state may take against her. The mere chance that a witness, in her own mind, may be attempting to curry favor is sufficient to allow for broad cross-examination in order to show bias. See Morrell v. State, 297 So.2d 579 (Fla. 1st DCA 1974). The fact that this witness was in the pretrial program was relevant to the credibility of this witness, *1360 and the exclusion of such testimony was error.
Now we must consider whether the judgment should nevertheless be affirmed under the harmless-error rule. § 924.33, Fla. Stat. (1983); 15 Fla.Jur.2d, Criminal Law, § 984. That determination depends upon the extent of the adverse effect, if any, these errors had upon the substantial rights of the defendant. It is fundamental that a defendant must be accorded a reasonable opportunity to present evidence of his defense and theory of the case to the jury. Here, the defendant contended that his girlfriend's death was entirely accidental and not attributable to the criminal act charged. Whether the shooting occurred as defendant described it or as young Andrew described it was obviously crucial to defendant's case. The first two erroneous rulings have prevented defendant from showing that the state's eyewitness was not present in the living room and did not witness the shooting, as he had testified at trial. This witness presented the only evidence that disputed defendant's version of an accidental shooting. But the fact that this witness had made prior inconsistent statements  if Mrs. Thornes' testimony is to be believed  was never known by the jury. Had the jury been properly informed of these facts, it could well have reached a different verdict on the issue of guilt. We cannot, under these circumstances, conclude that defendant's rights have not been substantially prejudiced by these errors. Likewise, the believability of Mrs. Thornes is important to the defense theory. Since her credibility was attacked by Ms. Miller's testimony, the trial court's precluding defendant from showing Miller's participation in the pretrial intervention program necessarily has substantial effect on defendant's right to attack the credibility of witnesses against him.
The judgment is REVERSED, and the case is REMANDED for a new trial.
BOOTH, C.J., concurs.
NIMMONS, J., dissents with written opinion.
NIMMONS, Judge, dissenting.
I disagree that the necessary predicate was laid by the defense for the introduction, through the mother of the victim, of Andrew's prior inconsistent statement. Defense counsel did not, on cross-examination of Andrew, confront Andrew with his prior inconsistent statement. I disagree with the majority's conclusion that it was sufficient, as a predicate, for the defense to stop at the point where Andrew said that he did not speak with his grandmother although acknowledging that he saw her after the shooting.
In Hancock v. McDonald, 148 So.2d 56 (Fla. 1st DCA 1963), this Court stated:
The rule is firmly established in Florida, that before testimony is admissible to impeach a witness by showing that he had made statements on another occasion that were contradictory of his present testimony, a proper predicate must be laid for such impeaching testimony by calling the attention of the witness to be impeached to the alleged contradictory statements, and to the occasion when it is alleged they were made, and by affording him an opportunity to explain, confess, or deny such contradictory statements. Bennett v. State, 66 Fla. 369, 63 So. 842 (1913). In an earlier civil case, Montgomery v. Knox, 23 Fla. 595, 3 So. 211 (1887), the Supreme Court of Florida said concerning impeachment by prior inconsistent statements:
"The familiar rule on this subject is that evidence of this kind is not admissible, even to contradict a witness of the opposite party, unless the attention of the witness, while giving his statement, has been called to the time, place, and circumstances of the contradictory statement, so as to afford him opportunity to refresh his memory, and make his answer advisedly."
Id. at 58, 59. The rule enunciated above is embodied in Section 90.614, Florida Statutes (1983). See also Hutchinson v. State, 397 So.2d 1001 (Fla. 1st DCA 1981); McGuire v. State, 411 So.2d 939 (Fla. 4th *1361 DCA 1982); Hoctor By and Through Hoctor v. Tucker, 432 So.2d 1352 (Fla. 5th DCA 1983); Studstill v. State, 394 So.2d 1040 (Fla. 5th DCA 1981); Ehrhardt, Florida Evidence, Section 614.1 (2nd Ed. 1984).
By reason of defense counsel's premature termination of her cross-examination of Andrew regarding his encounter with his grandmother, we have no idea what Andrew would have said had counsel directly confronted him with his prior statement. At that point, Andrew may very well have admitted or explained the prior statement. If so, the defense would have no need to call another witness to testify concerning the statement. That is the way the above long-recognized rule is designed to work. The majority's opinion erodes that rule and, I fear, will cause mischief.
With respect to the second issue, I do not agree that the trial court erred in refusing to permit the defense to elicit, on redirect examination of the defendant, the whereabouts of Andrew at the time of the shooting. I believe that such ruling did not exceed the bounds of the trial court's discretion in controlling the scope of redirect examination of witnesses. I am not prepared to say that the court erred in ruling, in effect, that the State's cross-examination question: "Q. Now, isn't it true that you actually did exactly what Andrew Stephens said, pointed the gun at shoulder level and shot Brenda Stephens in the face?" did not introduce the issue of Andrew's whereabouts so as to entitle defense counsel to inquire on redirect on that subject. The trial court's ruling was not an abuse of discretion.
On the third point, I agree with the majority that the defense was entitled to elicit from Paulette Miller the fact that she was, at the time of her testimony, under a pretrial intervention program administered by the state attorney's office. However, that being the only error I am willing to concede, I am of the view that such was harmless error.
I would, therefore, affirm.