601 So.2d 239 (1992)
METROPOLITAN DADE COUNTY, Appellant,
v.
Arnulfo ZAPATA, etc., et al., Appellees.
No. 91-1291.
District Court of Appeal of Florida, Third District.
May 26, 1992.
*241 Robert A. Ginsburg, County Atty., and Eric K. Gressman and Stephen J. Keating, Asst. County Attys., for appellant.
Haddad, Josephs, Jack & Gaebe and David K. Markarian, Coral Gables, for appellees.
Before BARKDULL, NESBITT and LEVY, JJ.
NESBITT, Judge.
Metropolitan Dade County (the County), appeals the final judgment rendered on a jury verdict in favor of appellee, Arnulfo Zapata, as personal representative of Mario Zapata (decedent), in a wrongful death action arising from a drowning accident which occurred in May 1987. The jury returned a verdict allocating 90% of the liability to the County and 10% to decedent. We reverse, and remand to the trial court for a new trial.
On May 17, 1987, decedent, his cousin Julio Perez, and their friend Bacchur Issa, went to Crandon Beach Park, which was attended by four lifeguards. The three boys walked in shallow water out to a sandbar approximately seventy-five yards off shore. Upon commencing their return to shore, they stepped into a drop off between six and eight feet deep, where, within minutes, Mario Zapata drowned. Decedent's representative brought the present action claiming that no lifeguard came to decedent's rescue until it was too late and further that, although known by the County to be a dangerous area, no signs were posted warning of the drop off.
Decedent's companion Julio Perez testified that decedent was a weak swimmer and that when he started drowning a struggle had ensued as Perez and Issa attempted to rescue him. Perez further testified that although he and Issa called for help and splashed for approximately two minutes, no lifeguard responded. The testimony of all four lifeguards on duty at the time was that all were attentive on the day of the drowning, and that none had noticed any signs of distress requiring immediate action. The County argued that because there were no obvious signs of distress, the death must have been the result of a sudden or silent drowning, and thus no breach of duty owed by the County to the swimmers occurred.
The County claims the trial court erred in: (1) allowing a "golden rule" closing argument; (2) precluding argument or comment regarding assumption of the risk; and (3) commenting on the evidence. Further, the County asserts that the trial court erroneously admitted into evidence: (1) the results of a failed mock drowning drill; (2) a lifeguard training film; and (3) a photograph depicting what a lifeguard's perception of a drowning person would have been from the lifeguard tower located closest to where decedent was found. Because we find the golden rule argument was improperly permitted, we reverse the order under review and remand for retrial. Further, in order to aid the trial court upon retrial, we address the additional points raised by appellant.
First, a golden rule argument suggests to jurors that they put themselves in the shoes of one of the parties, and is impermissible because it encourages the jurors to decide the case on the basis of personal interest and bias rather than on the evidence. Simmonds v. Lowery, 563 So.2d 183, 184 (Fla. 4th DCA 1990); Cummins Alabama, Inc. v. Allbritten, 548 So.2d 258, 263 (Fla. 1st DCA 1989); Schreidell v. Shoter, 500 So.2d 228, 233 (Fla. 3d DCA 1986), review denied, 511 So.2d 299 (Fla. 1987). Such an argument is improper and constitutes reversible error. Schreidell, 500 So.2d at 233. However, to be impermissible the argument must strike at the sensitive area of financial responsibility and hypothetically request the jury to consider how much they would wish to receive in a similar situation. Shaffer v. Ward, 510 So.2d 602, 603 (Fla. 5th DCA 1987).
Both plaintiffs and defendant had divided their closing statements between the issues of liability and damages. Moreover, in both plaintiffs' and defendant's closing, one attorney had discussed liability, while a different attorney had discussed *242 damages. During plaintiffs' rebuttal, the attorney who had discussed liability stated:
... . Influential family. It's an optometrist. And he has to talk about damages. He doesn't have to talk about damages. Oh, they are all so sure about their defense in this case, they won't talk about damages. The best thing to do is get up and say, ladies and gentlemen, you know better.
This didn't happen the way the Plaintiff says, I'm not even going to talk about damages.
THE CLERK: Time.
[Plaintiff's Attorney]: Walk in their shoes.

(Emphasis added).
Because the comment was made by the attorney who had previously discussed liability, plaintiff argues on appeal that the attorney was not asking the jury members to put themselves in the shoes of decedent's parents for purposes of assessing damages. However, when looked at in the context of the lines quoted above, we find that the comment was sufficiently prejudicial to constitute harmful error warranting a new trial.
Next, we agree with the County's argument that it was error to prohibit defense counsel from using the words "assumption of risk," and that the court's prohibition greatly handicapped its comparative negligence argument. The trial court had granted plaintiffs' motion in limine prohibiting defense counsel from arguing the theory of "assumption of risk," and advised defense counsel that if the words "assumption of risk" were used in asking a witness a question, any objection would be sustained.
It is true that under the present facts the affirmative defense of assumption of risk is merged into the principles of comparative negligence. Blackburn v. Dorta, 348 So.2d 287, 293 (Fla. 1977); see also Mazzeo v. City of Sebastian, 550 So.2d 1113, 1115 (Fla. 1989). However, although it would have been error to argue the theory of assumption of risk, the trial court should not have prohibited argument that the decedent contributed to his injury by assuming a risk he was aware of, when defense counsel introduced evidence demonstrating that decedent was a weak swimmer. Since we cannot say that any use of these words is barred, these words may be permitted if properly used.
Next, we agree with plaintiffs that the trial judge did not impermissibly comment on the evidence. During direct examination of the County's medical expert, the court ruled that a response concerning silent drowning had to be stricken, noting that it was predicated upon facts not in evidence:
... . You can ask him to give an opinion, based upon anything he has, anything he's read, but not on the assumption of facts that are not in evidence. Next question.
A careful review of the record has shown that at the time this comment was made, there were no facts in evidence to support the silent drowning theory and thus the trial judge's comment was appropriate based on the facts before him.
Next, we find no error occurred in the admission of testimony concerning a mock drowning drill, where the County opened the door to such testimony. Lifeguard Victor Davalos, over defense counsel's objection, testified on redirect examination about a mock drowning drill that occurred subsequent to decedent's drowning. Davalos testified that, depending on the season, such drills are held often and are used as a training technique. In this particular instance, a drowning "victim" swam to a known dangerous area, and simulated a struggle consistent with drowning. One inexperienced lifeguard failed to see the "victim" for over two minutes. Davalos himself did not respond for over two minutes, but testified that he was aware of the planned mock drowning drill that day, saw the "victim" go out, knew the "victim" was a strong swimmer, and, therefore, felt it unnecessary to watch him. Of the seven lifeguards on duty the day of the drill, Davalos was the only guard also on duty the day of decedent's drowning.
*243 Defense counsel objected to this testimony, stating that the questions concerning the mock drowning were irrelevant. During cross-examination of Davalos, defense counsel stated:
Q. Did you see anyone climbing the ladder where the victim was found [the day decedent drowned]?
A. No, Sir, I never did.
Q. You were watching the water, weren't you.
A. Yes, I was.
Defense counsel also elicited from Davalos that anyone swimming in the area where decedent drowned would have been seen by the lifeguards. Thus, the County attempted to establish that the drowning in the case at bar must have been a silent drowning because none of the allegedly diligent and attentive lifeguards on duty that day noticed any signs of distress until it was too late. According to the lifeguards' testimony, the following are signs of distress consistent with drowning, which require immediate attention and action: witnessing three individuals together, and then witnessing only two; witnessing a head or face low in the water or waves breaking over a person's head; calls for help and waving; witnessing heads bobbing up and down; "climbing the ladder," characterized by a vertical attempt to swim, along with splashing; and witnessing a victim swimming weakly.
The County argued that the results of the mock drowning drill were inadmissable as similar fact evidence, § 90.404(2)(a), Fla. Stat. (1991), because although the evidence was used to rebut the silent drowning defense, Cotita v. State, 381 So.2d 1146, 1149 (Fla. 1st DCA 1980) (similar fact evidence admissable to rebut a defense), review denied, 392 So.2d 1373 (Fla. 1981), the mock drowning was not similar enough to the event in question to be admitted solely on grounds of similarity. Smith v. State, 464 So.2d 1340, 1341 (Fla. 1st DCA 1985).
We agree that the dissimilarities between the mock drowning and the case at bar precluded the testimony as similar fact evidence. The mock drowning involved different guards (except for Davalos) than those involved on the day in question. Additionally, the lifeguard closest to the "victim" in the mock drowning drill was new and inexperienced, while the guard closest to the decedent in the instant case had been lifeguarding for four years.
Nevertheless, evidence of the mock drowning drill was admissable sub judice because defense counsel opened the door during cross-examination of the witness. As a general rule, a party may re-examine a witness about matters brought out on cross-examination. Noeling v. State, 40 So.2d 120 (Fla. 1949); Hinton v. State, 347 So.2d 1079, 1080 (Fla. 3d DCA), cert. denied, 354 So.2d 981 (Fla. 1977). Testimony is admissable on redirect examination which tends to qualify, limit, or explain testimony elicited on cross-examination. Thornes v. State, 485 So.2d 1357, 1359 (Fla. 1st DCA), review denied, 492 So.2d 1335 (Fla. 1986); Hinton, 347 So.2d at 1080. It is also generally held that the scope of redirect examination rests largely in the discretion of the trial court. Johnston v. State, 497 So.2d 863, 869 (Fla. 1986). It was within the trial judge's sound discretion to determine whether the line of questioning attempting to establish that the drowning must have been silent needed to be qualified, limited, or explained, in that even though a drowning victim may splash and call for help, lifeguards may nevertheless fail to notice the distress. However, on retrial the above line of questioning should be properly evaluated before a ruling is made on the merits during trial.
The County also argues that a lifeguard training film should not have been admitted into evidence. We agree. During plaintiffs' case-in-chief, the jury was shown a lifeguard training film, used by the County, depicting lifeguards saving actual drowning victims. Defense counsel objected on the ground that plaintiff was impermissibly seeking to elevate internal training procedures voluntarily promulgated by the County to the status of evidence of a legal duty.
*244 Rules made by a defendant to govern the conduct of employees are relevant evidence of the standard of care. Steinberg v. Lomenick, 531 So.2d 199, 200 (Fla. 3d DCA 1988), review denied, 539 So.2d 476 (Fla. 1989); Marks v. Mandel, 477 So.2d 1036, 1038 (Fla. 3d DCA 1985). However, as noted by Professor Wigmore:
[a difficulty] arises from the necessity of distinguishing between the use of such facts evidentially and their use as involving a standard of conduct in substantive law... . To take [a defendant's] conduct as furnishing a sufficient legal standard of negligence would be to abandon the standard set by the substantive law, and would be improper... . The proper method is to receive it, with an express caution that it is merely evidential and is not to serve as a legal standard.
2 J. Wigmore, Evidence § 461, at 593 (Chadbourn rev. 1979) (footnote omitted, emphasis in original). Consistent with the Wigmore analysis, this court has held that a jury receiving such evidence must be cautioned that the existence of an internal rule does not itself fix the standard of care. Nesbitt v. Community Health of South Dade, 467 So.2d 711, 715 (Fla. 3d DCA 1985); see also Steinberg, 531 So.2d at 200. This is necessary because of the public policy in favor of encouraging the voluntary setting of standards higher than those customarily employed in the community. Artigas v. Allstate Ins. Co., 541 So.2d 739, 740 n. 1 (Fla. 3d DCA 1989) (citing Steinberg, 531 So.2d at 201 (Baskin, J., concurring)). Accordingly, if the plaintiffs decide to introduce the training film, we direct the trial judge, upon timely request of counsel, to issue a cautionary instruction to the jury, limiting the use of the film as only some evidence of the standard of care.
Additionally, the County claims error in the admission of an enlarged photograph taken from the lifeguard tower closest to where decedent drowned, depicting a man in distress. Plaintiffs' aquatics expert testified that the visibility of the splashing and the movement in the photograph accurately portrayed the distress and instinctive movements displayed by drowning victims. Defense counsel objected on grounds that (1) Perez, the only available eye witness to the drowning did not testify to the mechanics of any splashing that occurred; (2) the photograph was irrelevant and immaterial; and (3) since it was plaintiffs' attorney who was the model for the photograph, he impermissibly became a witness in his own case. We find no error occurred in the admission of this photograph.
The basic test of admissability of photographs is not necessity, but relevance. Bush v. State, 461 So.2d 936, 939 (Fla. 1984), cert. denied, 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 345 (1986); Bauldree v. State, 284 So.2d 196, 197 (Fla. 1973). Photographs can be relevant to a material issue either independently or as corroborative of other evidence. State v. Wright, 265 So.2d 361, 362 (Fla. 1972); accord Straight v. State, 397 So.2d 903, 906 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981). A proper predicate for introducing the photograph must be laid by the party seeking to introduce it into evidence. City of Jacksonville v. Hampton, 108 So.2d 768, 770 (Fla. 1st DCA 1959). In the instant case, plaintiffs' expert testified that the photograph was a fair and accurate representation of a person in distress. It was not necessary that Perez authenticate the photograph because any witness with knowledge may lay the foundational facts necessary for admittance. Oja v. State, 292 So.2d 71, 73 (Fla. 2d DCA 1974). Accordingly, the photograph was admissable to assist the jury in understanding the expert's testimony. Belger v. State, 171 So.2d 574, 576 (Fla. 1st DCA), cert. denied, 176 So.2d 510 (Fla. 1965); City of Jacksonville, 108 So.2d at 771.
However, we are aware of the dangers inherent in using a posed photograph to support only the proponent's version of the facts. As noted by Professor McCormick:
The dangers inherent in this situation, i.e., the tendency of the photographs unduly to emphasize certain testimony and the possibility that the jury may confuse *245 one party's reconstruction with objective fact, have led some courts to exclude photographs of this type.
2 McCormick on Evidence, § 214, at 16 (John W. Strong et al. eds., 1992) (footnote omitted). Thus, upon timely request of counsel, we suggest the trial court, on remand, issue a cautionary instruction to the jury reminding them that the photograph is only one party's version of the facts. Finally, we note that the County's argument, that plaintiffs' attorney impermissibly became a witness in his own case, is entirely without merit.
Accordingly, the verdict in favor of plaintiffs is reversed and the case remanded to the trial court for a new trial, with directions consistent with this opinion.