948 So.2d 859 (2007)
Janis SCARLETT, Appellant,
v.
Elizabeth A. OUELLETTE, M.D., University of Miami, a private University d/b/a/ University of Miami School of Medicine, and, The Public Health Trust of Dade County d/b/a Jackson Memorial Hospital, Appellee.
Nos. 3D05-704, 3D05-116.
District Court of Appeal of Florida, Third District.
January 31, 2007.
*861 Richard B. Rosenthal, Miami; Joel S. Perwin, for appellant.
Abadin Jaramillo Cook & Heffernan, and Erin E. Dardis, and Maria Isabel Hoelle, Miami, for appellees.
Before GERSTEN, FLETCHER, and CORTIÑAS[*], JJ.
PER CURIAM.
Janis Scarlett ("Scarlett"), appeals an adverse final judgment, and the trial court's award of attorney's fees and costs. We affirm.
Scarlett suffered from carpal tunnel syndrome in her right hand and sought treatment from Dr. Elizabeth Ouellette, ("Dr. Ouellette"). Dr. Ouellette performed several tests on Scarlett and recommended carpal tunnel release surgery on Scarlett's right wrist. After surgery, Scarlett's right arm abnormally swelled.
Scarlett brought a medical malpractice action against Dr. Ouellette, and Dr. Ouellette's employers, the University of Miami School of Medicine, and the Public Health Trust of Dade County d/b/a/ Jackson Memorial Hospital (collectively "the defendants"). Scarlett alleged the defendants were negligent in the treatment of her carpal tunnel syndrome.
During discovery, both parties exchanged expert witness lists. The defendants listed Dr. L. Andrew Koman, ("Dr. Koman"), as an expert to testify on the issues of standard of care and entitlement to damages. Seven months prior to trial, defense counsel also produced Dr. Koman's Independent Medical Evaluation ("IME") report, which detailed his diagnosis.
Initially, Scarlett's counsel tactically chose not to depose Dr. Koman because she thought there was a chance the case would settle. Then, one month prior to trial, she requested to depose Dr. Koman. In response, the defendants provided Scarlett's counsel with several options for scheduling Dr. Koman's deposition. Scarlett's counsel rejected each date and waited until the eve of trial to finally depose Dr. Koman.
Scarlett's counsel then moved in limine to exclude Dr. Koman's opinion testimony that Scarlett's swelling was a factitious, self-inflicted injury. The trial judge denied the motion finding that: (1) Dr. Koman's IME report put Scarlett on notice of Dr. Koman's testimony, and (2) that Dr. Koman's testimony was neither a surprise nor prejudicial. The trial judge instructed defense counsel that Dr. Koman could not testify about any new information or any information outside of his report.
At trial, defense counsel called Dr. Koman as its expert witness. After defense counsel laid a proper foundation, Dr. Koman explained that he reviewed medical records, depositions, Scarlett's physician's IMEs, and his own IME. Upon reviewing this information, Dr. Koman opined that *862 Dr. Ouellette's treatment did not fall below the standard of care, and he believed that Scarlett's injury was self-inflicted.
During questioning, defense counsel showed Dr. Koman photographs depicting a person who had abnormal swelling on her legs. Dr. Koman testified that he recognized the photographs as a depiction of a condition called self-infliction. Scarlett's counsel objected on relevancy and prejudice grounds. The trial judge overruled the objections, but gave the jury a limiting instruction, explaining that the photographs were only for demonstrative purposes and that they were not photographs of Scarlett.
On rebuttal, Scarlett's counsel questioned their own expert, Dr. Ira Dushoff ("Dr. Dushoff"), about the very same photographs they objected to when Dr. Koman testified. Over the defendants' objection, Dr. Dushoff expressed his opinion that the photographs were classic examples of a condition called elephantitis, and were not examples of self-infliction.
At the trial's conclusion, the jury returned a defense verdict. The defendants then moved for attorney's fees and sanctions because Scarlett lied about her education and work experience. This false testimony directly related to her economic loss claim. The trial court granted attorney's fees and sanctions against Scarlett pursuant to sections 57.105 and 768.79, Florida Statutes (2004).
Scarlett raises five issues on appeal. The first two issues regarding voir dire and attorney's fees were not properly preserved for appeal, and therefore, we affirm without further discussion. We address Scarlett's remaining three issues.
Scarlett contends the trial court reversibly erred by: (1) allowing the defendants to present Dr. Koman's "surprise opinion testimony" that the cause of Scarlett's swelling was self-infliction; (2) allowing the defense to show irrelevant, prejudicial photographs without laying a proper predicate; and (3) not allowing Scarlett's expert witness to rebut Dr. Koman's testimony about self-infliction. We affirm.
Scarlett contends that the trial court should have excluded Dr. Koman's testimony regarding self-infliction because the defendants failed to give notice that Dr. Koman would testify about the causation of Scarlett's injury, and that Dr. Koman's opinion "drastically" changed from his initial report. We disagree.
In order for the trial court to exclude a witness or a witness' testimony from trial, the objecting party must establish that he or she was "surprised in fact" by the undisclosed witness or testimony. See Binger v. King Pest Control, 401 So.2d 1310, 1314 (Fla.1981). The trial court must also determine whether the undisclosed witness' testimony will prejudice the objecting party. Binger, 401 So.2d at 1314. When determining prejudice, the trial court should consider not only the adverse nature of the testimony, but also (1) whether the objecting party has the ability to cure the prejudice or, has independent knowledge of the existence of the testimony; (2) whether the calling party intentionally or in bad faith failed to comply with the pretrial order; and (3) whether this testimony caused disruption of the trial. Binger, 401 So.2d at 1314.
Here, the record completely refutes Scarlett's contentions that they were unaware of the existence of this testimony. First, the defendants listed Dr. Koman's name and the subject matter of his proposed testimony on the pretrial expert witness lists. Second, defense counsel gave Scarlett's counsel a copy of Dr. Koman's IME report seven months prior to the trial. This report included Dr. Koman's opinion that Scarlett had non-physiologic *863 pain and swelling, and that he needed to rule out factitious elements of the injury. Finally, Scarlett's counsel discussed Dr. Koman's diagnosis with him at his deposition prior to trial.
Additionally, there is no indication, let alone evidence, that the defendants intentionally or in bad faith failed to comply with the pretrial order. In fact, the defendants provided Scarlett's counsel with several dates to take Dr. Koman's deposition, and it was Scarlett's counsel's decision to wait until the eve of trial to actually take his deposition. Revealingly, everything Dr. Koman testified to at trial was based on information found within his IME report.
Further, Dr. Koman was not the only expert who believed that self-infliction was a possible cause of Scarlett's swelling. Scarlett's own expert, Dr. Saberski, also stated that factitious swelling was one of his differential diagnoses. Thus, the self-infliction defense was not a new defense, and was or should have been well-known to Scarlett before trial.
Since Scarlett's counsel clearly had notice that Dr. Koman would testify, and that his testimony would be based on information in the IME report, we find that this testimony was not a surprise, prejudicial, or a disruption of the trial. The trial court clearly did not abuse its discretion in denying the motion in limine and allowing Dr. Koman's expert testimony on self-infliction. Allstate Ins. Co. v. Mazzorana, 731 So.2d 38 (Fla. 4th DCA 1999)(excluding the testimony of an expert witness for a discovery violation is a drastic remedy which courts should only use in the most compelling of circumstances).
The second issue involves whether the trial court abused its discretion in permitting photographs, which depicted abnormal swelling of another person's extremities. Scarlett's counsel contends that the photographs were not relevant, and that counsel did not lay the proper predicate to introduce the pictures. We disagree and find that the trial court properly admitted the photographs as demonstrative exhibits.
Photographs are admissible if they are properly authenticated and relevant to prove a material fact in the lawsuit. § 90.401, Fla. Stat. (2004); Bauldree v. State, 284 So.2d 196 (Fla.1973). Photographs are also admissible to illustrate or explain the testimony of a witness. Straight v. State, 397 So.2d 903 (Fla.1981); Vargas v. State, 751 So.2d 665 (Fla. 3d DCA 2000). Further, any witness with knowledge that the photograph is a fair and accurate representation may lay the necessary foundation for admission of a photograph. City of Miami v. McCorkle, 145 Fla. 109, 199 So. 575 (1940); Bryant v. State, 810 So.2d 532 (Fla. 1st DCA 2002).
Here, the photographs were relevant to show the jury an example of a factitious, self-inflicted injury. The photographs helped illustrate the defense's theory that Scarlett's abnormal swelling was the result of self-infliction rather than the result of a breach of care by Dr. Ouellette.
Dr. Koman set the necessary foundation by testifying that he had previously observed swelling similar to Scarlett's and had diagnosed it as a self-inflicted injury. He then used the photographs as a demonstrative exhibit to assist him in explaining to the jury what self-inflicted swelling looks like. Specifically, he used the photograph to show the jury the sharp line of demarcation that appears with swelling from self-inflicted injuries. This was a proper use of a demonstrative exhibits. Metro. Dade County v. Zapata, 601 So.2d 239 (Fla. 3d DCA 1992).
We determine that the trial court did not abuse its discretion by allowing the *864 defendants to use a demonstrative exhibit because the photographs were relevant and did not create any unfair prejudice. See State v. Duncan, 894 So.2d 817 (Fla. 2004). Moreover, the trial judge properly gave the jury a limiting instruction before counsel showed the photographs. Zapata, 601 So.2d at 245.
Finally, Scarlett contends that the trial court abused its discretion in limiting the scope of Dr. Dushoff's testimony. We disagree. On rebuttal, Scarlett's counsel asked Dr. Dushoff to comment directly on the credibility of Dr. Koman's opinion that the photographs depicted self-infliction. The court sustained the defendants' objection but allowed Scarlett's counsel to rephrase the question and ask Dr. Dushoff whether the photographs were consistent with elephantitis. Dr. Dushoff stated that the photographs were a classic example of elephantitis.
After reading Dr. Dushoff's testimony in whole, the record does not show that the court improperly limited his testimony. See Enter. Leasing Co. v. Sosa, 907 So.2d 1239 (Fla. 3d DCA 2005); Carver v. Orange County, 444 So.2d 452 (Fla. 5th DCA 1983)(A trial judge can restrict an expert from commenting on the sufficiency or credibility of the opposing expert's evidence or testimony). In fact, Dr. Dushoff actually testified about his opinion about the causation of the injuries in the photographs.
Accordingly, we find that the trial court did not abuse its discretion in making these evidentiary determinations at trial, and we affirm the trial court's final judgment and order for attorney's fees and costs.
Affirmed.
NOTES
[*] Judge Cortiñas did not participate in oral argument.