484 So.2d 35 (1986)
James GREGORY and Sherry Gregory, His Wife, Appellants/Cross-Appellees,
v.
SEABOARD SYSTEM RAILROAD, INC., Appellee/Cross-Appellant, and
Tampa Electric Company, Appellee.
Nos. 84-1968, 84-2457.
District Court of Appeal of Florida, Second District.
January 29, 1986.
Rehearing Denied March 7, 1986.
*36 Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., and Beckham, McAliley & Schulz, P.A., Miami, for appellants/cross-appellees.
Peter J. Grilli of Allen, Dell, Frank & Trinkle, Tampa, and Dabney L. Conner of Boswell, Boswell & Conner, Bartow, and Robert P. Smith, Jr., of Hopping, Boyd, Green & Sams, Tallahassee, for appellee/cross-appellant Seaboard System R.R., Inc.
Julian Clarkson and Michael L. Rosen of Holland & Knight, Tallahassee, for appellee Tampa Elec. Co.
SCHEB, Acting Chief Judge.
Appellants James and Sherry Gregory, plaintiffs below, seek reversal of the trial court's order granting defendant Seaboard System Railroad a new trial on all issues between the Gregorys and Seaboard. The Gregorys' only contention is that the trial court abused its discretion in granting the new trial on the ground that their counsel's closing argument to the jury contained numerous improprieties.
Seaboard cross-appeals the trial court's denial of its motion for new trial in the Gregorys' suit against defendant Tampa Electric Company (TECO). Seaboard asserts that the issues between the Gregorys and TECO were closely related by facts and trial strategy to the issues between the Gregorys and Seaboard. Therefore, it contends that the suits against TECO and Seaboard must be retried together.
We find merit to the Gregorys' contention and reverse the order granting Seaboard a new trial. We find no merit to Seaboard's cross-appeal and affirm the trial judge's denial of Seaboard's motion for new trial concerning the issues between the Gregorys and TECO.
The facts giving rise to the Gregorys' action involved an injury Mr. Gregory sustained as an employee of Seaboard. While he was measuring vertical clearances of overhead pipes and TECO's electrical transmission lines which crossed Seaboard's *37 main line tracks, electricity in a transmission line jumped to a pole to which a steel measuring tape was attached. The electricity traveled down the tape to the ground. Mr. Gregory, who was kneeling on the ground holding the tape, received an electrical shock of unknown voltage. He was not electrocuted, but the shock resulted in serious injuries which required extensive treatment. These injuries, he claimed, resulted in his permanent disability.
Mr. Gregory, individually, sued Seaboard under the Federal Employer's Liability Act, 45 U.S.C.A. § 51 (1972). He alleged Seaboard was negligent in, among other things, failing to provide him with safe tools and equipment. Both Mr. and Mrs. Gregory sued TECO for negligence. Among other things, they alleged TECO constructed its power lines too close to the railroad tracks and failed to abide by the applicable safety codes in maintaining and repairing these lines. In another count they sued TECO as third party beneficiaries based on TECO's alleged breach of its contract with Seaboard. A jury trial was held on the Gregorys' claims against Seaboard and TECO.
The jury heard evidence concerning Mr. Gregory's duties and responsibilities in measuring the pipes and electrical lines, as well as evidence concerning TECO's contract with Seaboard. The parties presented considerable evidence concerning Mr. Gregory's injuries. Mr. Gregory offered expert testimony on the extent of his economic losses. Following presentation of the evidence, the trial court denied Seaboard's motion for directed verdict.
Twice during the closing argument by the Gregorys' counsel Seaboard moved for a mistrial outside the jury's presence. Both times Seaboard contended that the Gregorys' counsel improperly expressed his personal opinion in commenting on the evidence. The trial judge denied both motions.
During rebuttal by the Gregorys' counsel, Seaboard's attorney requested that both counsel be allowed to approach the bench. The following colloquy then took place:
[GREGORYS' COUNSEL]: May I finish my Final Argument? This is the third time he's done it. It's terribly impolite. He has no basis and he can take it up outside after the jury retires, Your Honor.
THE COURT: All right. I will reserve the right.
[SEABOARD'S COUNSEL]: Would that apply prospectively?
THE COURT: Yes.
Thereafter the Gregorys' counsel resumed his rebuttal argument.
After the conclusion of closing arguments Seaboard renewed its motion for mistrial on the grounds that the Gregorys' counsel had expressed his personal opinion and had conducted his final argument in an emotional and inflammatory manner. The judge again denied the motion.
The jury returned a verdict exonerating TECO. It found Seaboard 70% negligent and Mr. Gregory 30% negligent. It awarded Mr. Gregory $980,000 in damages but made no award to Mrs. Gregory. The trial judge then entered judgment for $686,000 plus costs against Seaboard and entered judgment in favor of TECO.
After entry of judgment, Seaboard renewed its motion for directed verdict and also moved for a new trial against the Gregorys on all issues. In this motion Seaboard alleged several grounds, including its contention that the closing argument by counsel for the Gregorys was laced with numerous improprieties. In support of the motion, Seaboard also listed a number of other comments made by the Gregorys' counsel to which it had not objected at trial.
The judge again denied the motion for directed verdict holding that he still believed that the evidence presented to the jury was sufficient and that he was correct in allowing the case to be decided by the jury. However, the judge granted Seaboard's motion for new trial on all issues between it and the Gregorys because he found that the closing argument of the *38 Gregorys' counsel was improper. He listed twenty-eight improper statements. Seaboard had only referred to six of them in its mistrial motions at trial. The judge said:
The court has enumerated excerpts from Plaintiffs' argument and individually these statements might to some extent be explained away, but when said argument is read in its entirety it is apparent that counsel's remarks reveal a pattern of misconduct so persuasive and so complete as to leave any doubt that Defendant Railroad was denied a fair trial on all the issues.
Thereupon, the Court finds:
1. That the Plaintiffs' counsel stated his personal opinions and made representations of certain matters as being "facts" and commented on the justness of the case in violation of the Code of Professional Responsibility and contrary to proper conduct during a trial, which said comments were clearly calculated to prejudice the Defendant, SEABOARD.
2. Plaintiffs' counsel sought to influence the jurors in favor of his clients by appealing to their passions and prejudices.
Seaboard also moved for a new trial as to the Gregorys' claim against TECO which the court denied. This timely appeal by the Gregorys and cross-appeal by Seaboard ensued.
We first address the granting of a new trial as to Seaboard. Generally, a timely objection to any prejudicial remark by counsel is necessary for the granting of a new trial. Tyus v. Apalachicola Northern Railroad, 130 So.2d 580, 587 (Fla. 1961); Wasden v. Seaboard Coast Line Railroad, 474 So.2d 825, 829 (Fla. 2d DCA 1985). Although a trial judge should intervene to prohibit counsel's improper comment even when opposing counsel does not object, the duty of counsel to object is not alleviated. Wasden, 474 So.2d at 831. See also Honda Motor Co. v. Marcus, 440 So.2d 373, 376 n. 1 (Fla. 3d DCA 1983), petition for review dismissed, 447 So.2d 886 (Fla. 1984); Hillson v. Deeson, 383 So.2d 732 (Fla. 3d DCA 1980).
There are two exceptions to the timely objection rule. First, a new trial may be ordered absent a timely objection if the error is so fundamental as to extinguish a party's right to a fair trial. Sears Roebuck & Co. v. Jackson, 433 So.2d 1319, 1322 (Fla. 3d DCA 1983). See also Wasden, 474 So.2d at 829. Second, a new trial may be granted "if the prejudicial conduct in its collective import is so extensive that its influence pervades the trial, gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury." Tyus, 130 So.2d at 587 (citing Seaboard Air Line Railroad v. Strickland, 88 So.2d 519, 523 (Fla. 1956)). See also Wasden, 474 So.2d at 829.
Here, twenty-two of the statements cited by the trial judge were neither objected to nor mentioned in the motions for mistrial. We think it significant that Seaboard's counsel first objected to most of these statements in its written motion for new trial. Equally significant, we believe, is the fact the trial judge did not perceive them as improper until he later read the transcript of the closing argument. These two points are particularly noteworthy since the trial judge appeared to have based his decision on the second exception, i.e., the jury acted from prejudice or passion due to counsel's improper argument. As this court recently observed, "Where the great majority of improprieties have been identified by opposing counsel or the judge only after close scrutiny of the written transcript of proceedings, it is less likely that there was in fact such a pervasive prejudicial effect." Wasden, 474 So.2d at 831. Of course, the jury was never provided a written transcript of the closing arguments before rendering its verdict.
Furthermore, it is difficult to classify these twenty-two statements as falling under the fundamental error exception. See A.H. Robins Co. v. Ford, 468 So.2d 318 (Fla. 3d DCA 1985). "`Fundamental error,' which can be considered on appeal without objection in the lower court, is error which *39 goes to the foundation of the case or goes to the merits of the cause of action." Sanford v. Rubin, 237 So.2d 134, 137 (Fla. 1970). See also Wasden, 474 So.2d at 831. Appellate courts should exercise their discretion under this exception very guardedly. Sanford, 237 So.2d at 137.
Even if a lawyer asserts his personal knowledge of the facts in issue in violation of D.R. 7-106(C)(3) of the Code of Professional Responsibility, such impropriety does not necessarily equate to fundamental error. Wasden, 474 So.2d at 830. While we do not condone the type of comments complained of in this case, the making of those comments by the Gregorys' counsel alone is not tantamount to fundamental error. Wasden, 474 So.2d at 830-831.
Since the twenty-two statements to which no objections were made do not fall under either of the above exceptions, the trial court could not properly use them as a basis for granting a new trial. Thus, we must focus our review on the six comments to which Seaboard took exception when it moved for mistrial. Those comments were as follows:
1) ... and I have never seen a witness in my life that looked like that man on the stand.
2) Here's a true scientist ...
3) We have brought the leading experts in here ...
4) Folks, I think it defies belief that this railroad after this trial is going to continue anything for Mr. Gregory.
5) And I commend TECO, I commend their lawyers.
6) And they [Seaboard] have elected under this lawsuit not to tell the truth.
We conclude that those six comments do not support a finding that the closing argument by the Gregorys' counsel constituted conduct of such a pervasive or prejudicial influence as to deny Seaboard a fair trial on the issue of liability. See Wasden. Moreover, on the issue of damages, we also conclude that there was no such pervasive or prejudicial influence as to deny a fair trial. Wasden, 474 So.2d at 831-832. There was evidence presented to the jury that Mr. Gregory suffered a $1,718,806 to $2,063,129 economic loss. In view of this evidence and the evidence of the nature of his injury and his pain and suffering, the jury's award of $980,000 damages does not reflect that the jury was motivated by prejudice against Seaboard resulting from improper remarks of counsel. Id.
Finally, in the order granting a new trial on all issues, the trial judge did not delineate how the damages awarded were unsupported by the evidence. Likewise, the court made no finding that the verdict was against the manifest weight of the evidence. On this issue then, this case is akin to Wasden which involved a new trial on the issue of damages alone. Wasden, 474 So.2d at 830. Here, as in Wasden, the trial judge has expressed grounds for his order of a new trial, but the grounds are not supported by the record. Therefore, we are not required to remand to the trial court for an order specifying the grounds supporting the order for a new trial as required in Prime Motor Inns, Inc. v. Waltman, 480 So.2d 88 (Fla. 1985).
Consequently, we conclude that the trial judge abused his discretion in ordering a new trial as to the issues between Seaboard and the Gregorys. Thus, we vacate the order granting a new trial and remand with directions that the trial court reinstate the final judgment on the jury verdict in favor of the Gregorys against Seaboard with interest from the date of the verdict.
We affirm the judgment in TECO's favor.
CAMPBELL, J., concurs.
SCHOONOVER, J., concurs in part, dissents in part.
SCHOONOVER, Judge, concurring in part, dissenting in part.
I agree that the trial court properly denied Seaboard's motion for a new trial concerning the issues between the Gregorys *40 and TECO. I respectfully disagree, however, with the majority's holding that the trial court erred in granting Seaboard a new trial on the issues between Seaboard and the Gregorys.
Although most of the twenty-eight comments enumerated by the trial court were not timely objected to, the court found that the comments came within the second exception to the timely objection rule. I would hold that the court did not abuse its discretion in finding that trial counsel's prejudicial conduct in its collective import was so extensive that its influence pervaded the trial and gravely impaired the jury's calm and dispassionate consideration of the evidence and the merits. Tyus v. Apalachicola Northern R.R. Co., 130 So.2d 580 (Fla. 1961). The trial court's order stated that the twenty-eight enumerated comments were only excerpts from the argument. It found that, although the statements might to some extent be explained individually, the argument considered in its entirety revealed a pattern of misconduct so persuasive and so complete as to leave no doubt that Seaboard was denied a fair trial on all of the issues.
It is true that in Wasden v. Seaboard Coast Line R.R. Co., 474 So.2d 825 (Fla. 2d DCA 1985), this court stated that pervasive prejudice is less likely to have in fact occurred where a great majority of improprieties are identified by counsel or the judge only after close scrutiny of the written transcript. We did not state, however, that merely because objectionable comments are enumerated or identified later, they cannot be deemed as having caused a pervasive prejudicial effect. In Wasden, the defendant's motion for new trial identified six improper comments. After having time for additional reflection, the defendant identified a total of eighteen improper comments in a memorandum to the court. The trial court, however, did not rely on the eighteen improper comments in granting a new trial. It referred specifically to only two of them in its order, and this court found error in the trial court's reliance upon them. In the case sub judice, the trial judge did not see fit to interject himself into the trial by interrupting trial counsel's argument each time an improper comment was made. He later found that twenty-eight comments made by trial counsel were improper and that those comments, considered in the context of the entire closing argument, necessitated a new trial.
The trial court's discretion to grant a new trial is of such firmness that it should not be disturbed except on a clear showing of abuse. Castlewood International Corp. v. LaFleur, 322 So.2d 520 (Fla. 1976). Mere disagreement from an appellate perspective is insufficient, as a matter of law, to overturn a trial court ruling on the need for a new trial. Castlewood. The trial judge is present in the courtroom throughout the trial and has a superior vantage point in passing on the ultimate correctness of the jury's verdict and in assessing the need for a new trial. I do not believe that the Gregorys have made the necessary showing that the trial judge abused his discretion in this case, and I, accordingly, would affirm.