553 So.2d 787 (1989)
Jacqueline H. MOORE, Appellant,
v.
TAYLOR CONCRETE & SUPPLY COMPANY, INC., Appellee.
No. 89-211.
District Court of Appeal of Florida, First District.
December 20, 1989.
James R. Green, of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for appellant.
Daniel C. Shaughnessy, of Coker, Myers, Schickel, Cooper & Sorenson, P.A., Jacksonville, for appellee.
JOANOS, Judge.
Jacqueline Moore (Moore) appeals the final judgment and damages award rendered in a lawsuit filed by Moore against Taylor Concrete and Supply Company, Inc., (Taylor Concrete) and its driver, Frank Broxton, for injuries Moore suffered in a motor vehicle accident involving Taylor Concrete's truck. The issues for our review concern various evidentiary rulings at trial. We reverse and order a new trial.
The accident occurred on the night of June 7, 1984, at approximately 9:30 p.m., on State Road 121, north of Gainesville. At that time, Moore was traveling north from Gainesville to her home in Brooker. It was a dark night, and there were no street lights in the area. At that same time, Frank Broxton was operating a Taylor Concrete *788 tractor trailer rig with a flatbed trailer loaded with manhole covers. Although Broxton's normal work hours were from 7:00 a.m. until 4:30 p.m., on this particular day he attempted to make a late delivery to a concrete company. When he arrived at the concrete company at 9:00 p.m., he found the business closed.
Because the business where Broxton attempted to make his delivery is located on a dead-end street, he backed the flatbed trailer out to State Road 121, a distance of 300 yards, in order to turn around. Herbert Bevill, Broxton's helper, was posted on the road with a flashlight to watch for traffic, and to signal Broxton as he negotiated the turn. It was so dark in the area that the driver was unable to see either the ditch or the shoulder of the road. When Broxton backed, the trailer completely straddled the road, blocking traffic from both directions. According to Broxton's deposition testimony, he saw no headlights approaching as he backed out. Then, when the trailer was extended completely across the road, he saw headlights coming around a curve in the road. He stopped the truck, put it in gear and "[was] fixing to take off, get out of the way." Before Broxton got the truck in first gear, Moore's automobile struck the Taylor Concrete trailer.
Trooper Ornowski was the investigating officer. Her testimony reveals that she approached the scene with her bright lights on, looking for the accident. The trooper observed cars on the side of the road, and "saw one car in the middle of the road damaged." She said she kept her bright lights on and turned on her spotlights, as she looked for the other vehicle. As the trooper pulled up next to the damaged vehicle, she suddenly became aware of the other vehicle, stating that at that time she was approximately fifty to seventy feet from the incident. At first the trooper was unable to determine in which direction the flatbed semi was going. When the trooper was asked if there were any lights on the side of the flatbed trailer, the following exchange ensued:
A. No, there was not.
Q. Well, how easy was it to see the truck?
A. It was almost impossible looking at it, because the flatbed itself was dark and primer colored, the tire was black, the wheels that were in the tires were black. The semi itself was dark in color. It had running lights on it, but the running lights were facing the other direction, and you could not pick them up from the side.
Q. The running lights, when you say that, are you referring to the cab?
A. Yes sir. Those are the orange lights across the top of it.
Q. They were not visible as you approached it from the side?
A. No, sir, they were not.
During cross examination, Trooper Ornowski stated that although all the lights on the truck were operating, those lights were on the cab of the rig facing the driveway rather than the roadway. That is, the lights on the cab were facing west and the taillights of the rig pointed east, while State Road 121 runs in a north-south direction. The trooper said the flatbed trailer had reflectors, but no lights.
During recross examination of the trooper, counsel for Taylor Concrete asked the questions which are the subject of the first issue appealed, i.e., whether the trial court erred in overruling appellant's objection to appellee's examination of Trooper Ornowski, which inferred that the trooper did not issue a traffic citation to Taylor Concrete's driver:
Q. Trooper, I assume, and I don't mean to belabor the point, I know it's been a long time ago, you've got one sheet or two sheets of paper there that you're trying to remember on, you talked to people, I think, that you finally agreed with me on at different times, but if Florida law had required that there be lights on that trailer, you would have  you would have known that and you would have cited somebody for that, wouldn't you?
A. Probably. I don't generally cite everybody for everything. You know, when I was working an accident or going *789 to stop somebody, I don't generally cite them for everything.
Q. But generally in cases where there's an accident involved or something and you would have been there, you would have cited it. Do you remember what was on the back of the flatbed?
MR. GREEN: Excuse me, your Honor. Can we approach the bench?
At that point, Moore's counsel objected to opposing counsel's statement which indicated that Taylor Concrete's driver was not cited in the accident. The objection was overruled.
The testimony of Mr. Green, the first witness to arrive at the scene, established that he had been driving behind Moore, that she was not speeding, and in fact, had been driving slightly under the speed limit. Mr. Green said he intended to pass Moore at one point, but did not do so because he knew there was a curve in the road. Mr. Green testified that he did not see the trailer until after he had stopped, and was walking toward Moore's car to give assistance. During cross examination, Mr. Green stated the flatbed truck did not have any lights on it, and he did not see any reflectors.
Taylor Concrete's defense at trial was predicated on the theory that Moore was negligent. To that end, Taylor Concrete's counsel introduced an Alachua General Hospital emergency room record which indicated that Moore had a blood alcohol level of .187 on the night of the accident. The hospital records custodian and the laboratory technician agreed that a record charting error was possible, but both considered such an error unlikely.
Evidence offered to counter the defense allegation that Moore had been drinking on the night of the accident included the testimony of Trooper Ornowski, Mr. Green, and Moore. Trooper Ornowski stated she did not detect any odor of alcohol on Moore's breath. The trooper further stated that Moore amazed her in that she was able to talk coherently, answer questions, and help with the investigation, in spite of the seriousness of her injuries. Mr. Green stated unequivocally that "[t]he lady was not drinking." Moore also testified that she did not have anything to drink on the night of the accident.
The record contains extensive evidence concerning the severity of the injuries Moore suffered in the accident, as well as the long-term effects those injuries have had. Her facial injuries required plastic surgery; her knee cap was knocked off; and she suffered abdominal injuries that required additional surgery two to three years after the accident. In addition, Moore has experienced memory problems that interfered with her ability to perform well at work, chronic positional vertigo, seizure disorders for which she takes Dilantin, and depression that was considered suicidal at one point.
The second issue concerns statements made by Taylor Concrete's counsel during closing argument, and the thwarted attempt of Moore's counsel to rebut those statements. The following portions of the argument advanced by Taylor Concrete's counsel elicited objections from Moore's counsel:
The judge is going to read your verdict form for you in a few minutes. He's going to give you a copy of it and you're going to go out. Okay. The first question is going to be, Was there negligence on the part of Taylor Concrete. Reply. Was it the legal cause of the injuries to Jackie Moore? I believe, and the circumstances are out there, that Mr. Broxton was reasonable in the efforts that he was trying to make on that night. And your answer there should be no. If you disagree with me, if your rememberance of the evidence, your understanding of the facts are different, you go to the next question: Was there negligence on the part of Jackie Moore that was the legal cause of her injuries. I believe you found 
MR. GREEN: Your Honor, I'm going to object to him testifying what he believes in closing argument.
THE COURT: Overruled.
MR. SCHICKEL: The evidence will have shown you that Jackie Moore was at least as negligent at that point in time as *790 Taylor Concrete, if at all. The third question then, if the answer to the second one is yes  and you have to divide it up. And number three, the percentage of negligence that you think was applicable to Taylor Concrete, as well as to Ms. Moore. We've talked about that. I think if not fifty-fifty, even more than that, if you get that far.
.....
The summary of where I am here  and what I'm going to do as I leave you now, we've gone through and talked about liability. We've talked about the damages. We've talked about why I see the problems that  and I believe that the evidence has shown  the problems with Ms. Moore are her own creation by her obtaining the drugs and narcotics and so forth or by her pre-existing conditions or by whatever she has manufactured at work, in having to work for a new boss, are her own. She created that herself.
.....
I want  I believe the jury system believes, okay, that fairness, truth and justice will come out here. We didn't get the truth there. We didn't get the truth from the stand or from the witnesses  from her, I mean, under oath. I think we got it, hopefully, from everyone else. And the fairness and justice will come through you-all. And with that, Taylor Concrete will be appreciative. Thank you very much.
In rebuttal argument, Moore's counsel stated:
... there are some things that I do want to talk to you about in response to what Mr. Schickel said. I continue to be amazed. And let me just say this. Mr. Schickel stood up here and said I believe this, I believe that. And what he believes is not what's important in this case. It's improper, in my opinion, for him to lay his credibility on the line and for him to come and say, "I don't agree with what you believe." I'm not up here saying what I believe, put my credibility on the line. I'm an officer of the court. I present evidence as strongly and forcefully as I can for my client. That's what he's supposed to do.
MR. SCHICKEL: Your Honor, he's imputing [sic] my integrity now. If I misspoke something, I certainly apologize to the Court and to this jury but 
THE COURT: Objection sustained.
During its deliberations, the jury returned with questions for the court. The first questions were: (1) "If she skidded sixty feet, what speed would you be driving at to stop in sixty feet?," and (2) "Who was charged with the accident?" The jury returned a second time with the following question: "There's a disagreement on distribution of negligence percent. Not everybody will agree. Now what?" In each instance, the trial court advised the jurors to rely on their recollection of the facts that were in evidence.
The jury returned a verdict assessing Moore's damages at $300,000, and finding Moore fifty-two percent negligent, and Taylor Concrete forty-eight percent negligent. (The driver was dismissed as a party before the case was submitted to the jury.) Moore's motion for new trial was denied, and a final judgment was entered awarding her damages and costs in the total amount of $113,736.50.
It is well settled that questions or allusions which suggest that a driver has or has not been charged with a traffic violation in connection with an accident constitute prejudicial error, which in appropriate circumstances will warrant a new trial. Eggers v. Phillips Hardware Co., 88 So.2d 507 (Fla. 1956); Ryder Truck Rental, Inc. v. Johnson, 466 So.2d 1240, 1241 (Fla. 1st DCA 1985); Riedel v. Driscoll, 124 So.2d 42, 47 (Fla. 1st DCA 1960); Royal Indemnity Co. v. Muscato, 305 So.2d 228 (Fla. 4th DCA 1974), cert. denied, 321 So.2d 76 (Fla. 1975); Walton v. Robert E. Haas Construction Corp., 259 So.2d 731, 734 (Fla. 3d DCA 1972), cert. denied, 265 So.2d 48 (Fla. 1972); Volk v. Goetz, 206 So.2d 250 (Fla. 4th DCA 1967). See also MacNeil v. Singer, 389 So.2d 232 (Fla. 5th DCA 1980); Nadler v. Home Ins. Co., 339 So.2d 280 (Fla. 3d DCA 1976).
*791 Moreover, in some circumstances the error has been deemed so harmful that a new trial was warranted even though the objecting party failed to move for a mistrial. For example, in Albertson v. Stark, 294 So.2d 698 (Fla. 4th DCA), dismissed, 299 So.2d 602 (Fla. 1974), during defense counsel's argument to the jury, he told jurors that the defendant had not been charged with the accident. Appellant's counsel moved the trial court to strike the argument and to instruct the jury to disregard it, which motion was granted. There was no motion for a mistrial, but appellant timely moved for a new trial. Appellees conceded that the remark was improper, but argued that since appellant did not move for a mistrial, he got all the relief he requested. The court held the prejudicial effect was so great that it could not be dispelled by the trial court's instruction to disregard the comment. The court explained that reversal for new trial was required because 
Common sense (and experience as well) tells us that to the average juror the decision of the investigating police officer, i.e., whether to charge one driver or the other with a traffic violation based upon the result of his investigation, is very material to, if not wholly dispositive of, that juror's determination of fault on the part of the respective drivers. An examination of the cold record in this case discloses rather clear evidence of appellee's negligence and little, if any evidence of appellant's contributory negligence. This is not to say that such evidence would not sustain the jury's verdict. It does, however, furnish us a valid basis to conclude that under the facts of this particular case the harmful effect of counsel's improper argument was most likely not cured or removed by the court's instruction to the jury to disregard such argument.
Taylor Concrete concedes that references or allusions to whether a party was charged or not charged in a traffic accident are highly improper and prejudicial. Indeed, Taylor Concrete has cited no authority on this issue. Instead, it takes the ingenuous position that the fact that the jury subsequently asked who was charged in the accident demonstrates that if error, this particular line of questioning was harmless error.
We conclude that the contrary is true. The evidence as to the truck driver's negligence was strong. The testimony of Mr. Bevill, the truck driver's helper who was signalling traffic, and of Mr. Green, the first witness on the scene, established that visibility was so nearly nonexistent that Mr. Green braked and then swerved into the ditch to avoid hitting the flatbed truck that completely blocked the road. In addition, the trooper who investigated testified that although she was looking for the accident, she was startled when she saw the truck  because it loomed up so suddenly. The trooper also testified that appellant's car skidded sixty feet before impact. When defense counsel asked whether the skid marks indicated appellant attempted to turn off the road to avoid the collision, the trooper stated the skid marks were straight. When defense counsel pursued this line of questioning, the trooper explained that when a driver hits the brakes in a "panic" braking situation in a fourwheel drive vehicle such as the one appellant was driving, the steering locks so that the car will not turn if the road is dry, even though the driver attempts to swerve.
Because Moore's objection to questioning which suggested that the driver was not charged in the accident was overruled by the trial court, the jury was left to infer that the truck driver was not charged. From this inference, the next logical inference for the jury was that appellant was charged. Undoubtedly, an additional factor in the jury's determination that Moore was fifty-two percent at fault, was the effort of Taylor Concrete's counsel to show that Moore had a pattern of drinking. To that end, counsel attempted to introduce evidence that Moore had been hospitalized in 1970-1971 for treatment of alcohol abuse, and that she had undergone psychiatric counseling in 1974 for emotional problems related to a divorce. Although most of the evidence was ruled inadmissible, the trial court's instructions to disregard any *792 evidence of Moore's prior problems with alcohol as evidence that she had been drinking on the night in question, though proper, were so lengthy and so frequent that it is unlikely the jury could remain impervious to the inference generated by the effort to introduce this evidence.
When these circumstances are considered in the context of the line of questioning that indicated that Taylor Concrete's driver was not cited in the accident, the prejudice to Moore's case is apparent. In Ryder Truck this court held that appellee's negative response to his lawyer's question whether he had been cited for a traffic violation in the action warranted a new trial,
because the question and answer were highly improper and prejudicial, and the harm resulting therefrom was not cured by the trial court's instructions to the jury. Considering the context, the question and response allowed the jury to infer that appellee was free of fault in the accident.
466 So.2d at 1241. In this case, as in Ryder Truck, defense counsel's questions suggested that Taylor Concrete's driver was free of fault in the accident. The inference to be drawn from this suggestion was that Moore had been charged, and could have very well resulted in the jury's finding that she was fifty-two percent negligent. We conclude that the error in this regard was not harmless, and requires reversal for a new trial.
The second issue raised in this appeal concerns the propriety of an attorney's expression of his personal belief regarding the facts of a case. It is axiomatic that a lawyer's expression of his personal opinion as to the credibility of a witness, or of his personal knowledge of facts in the case, is fundamentally improper. Stokes v. Wet 'N Wild, Inc., 523 So.2d 181 (Fla. 5th DCA 1988); Brumage v. Plummer, 502 So.2d 966 (Fla. 3d DCA), review denied, 513 So.2d 1062 (Fla. 1987); S.H. Investment & Dev. Corp. v. Kincaid, 495 So.2d 768 (Fla. 5th DCA 1986); review denied, 504 So.2d 767 (Fla. 1987); Gregory v. Seaboard System R.R., Inc., 484 So.2d 35 (Fla. 2d DCA), review denied, 492 So.2d 1334 (Fla. 1986); Borden, Inc. v. Young, 479 So.2d 850 (Fla. 3d DCA 1985), review denied, 488 So.2d 832 (Fla. 1986); Wasden v. Seaboard Coast Line R. Co., 474 So.2d 825 (Fla. 2d DCA 1985), review denied, 484 So.2d 9 (Fla. 1986); Schreier v. Parker, 415 So.2d 794 (Fla. 3d DCA 1982); Seguin v. Hauser Motor Co., 350 So.2d 1089 (Fla. 4th DCA 1977); Miami Coin-O-Wash, Inc. v. McGough, 195 So.2d 227 (Fla. 3d DCA 1967). In Miami Coin-O-Wash v. McGough, the court stated:
An attorney should not assert in argument his personal belief in his client nor in the justice of his cause. By doing so, an attorney ... becomes an additional witness for his client, not subject to cross examination. His knowledge of the case is purely hearsay and would not be admissible from any witness.
195 So.2d at 229.
Although the interjection of an attorney's beliefs is improper, such impropriety does not always equate to fundamental error warranting a new trial. Gregory v. Seaboard System, 484 So.2d at 38; Wasden v. Seaboard Systems, 474 So.2d at 830-31; Nelson v. Reliance Insurance Co., 368 So.2d 361 (Fla. 4th DCA 1978). There are two exceptions which will warrant a new trial, even in the absence of a timely objection: (1) if the error is so fundamental as to extinguish a party's right to a fair trial, and (2) if the prejudicial conduct in its collective import is so extensive that its influence pervades the trial so as to impair the jury's calm and dispassionate consideration of the evidence. Gregory v. Seaboard Systems, 484 So.2d at 38.
The Third and Fifth District Courts have held that expressions by a lawyer of his personal opinion are in derogation of the Code of Professional Responsibility (now Rules of Professional Conduct, of the Rules Regulating the Florida Bar), and will not be condoned. In keeping with this position, both district courts have expressed the intention to reverse and remand such impropriety for a new trial, even without a contemporaneous objection. See Stokes v. Wet `N Wild, Inc., 523 So.2d *793 at 182; S.H. Investment & Dev. Corp. v. Kincaid, 495 So.2d at 772; Borden, Inc. v. Young, 479 So.2d at 851; Schreier v. Parker, 415 So.2d at 795. See also Albertson's Inc. v. Brady, 475 So.2d 986, 989 (Fla. 2d DCA 1985); review denied, 486 So.2d 595 (Fla. 1986).
The challenged comments in this case are in the same vein as specific examples of comments deemed improper expressions of an attorney's personal beliefs in Wasden v. Seaboard Coast Line R. Co.; Gregory v. Seaboard System R.R., Inc.; S.H. Investment & Dev. Corp. v. Kincaid; Stokes v. Wet `N Wild, Inc., and Miami Coin-O-Wash, Inc. v. McGough. Although the comments were not inflammatory, they had the effect of improperly interjecting defense counsel into the proceedings as a witness for his client. See Miami Coin-O-Wash v. McGough. Timely objections to these comments were overruled, and the efforts of Moore's counsel to point out the impropriety during rebuttal argument was met with a sustained objection.
Standing alone, the challenged statements by Taylor Concrete's counsel during closing argument may not have been sufficient to require a new trial. However, a new trial on all issues is required, due to the prejudicial effect of eliciting testimony that Taylor Concrete's driver was not charged with failure to have lights on the flatbed trailer. Therefore, we take this opportunity to caution counsel that zealous advocacy does not excuse expressions of one's personal beliefs and representations as to one's view of the facts. Upon retrial, Taylor Concrete's counsel is adjured to refrain from statements and comments of this ilk.
Accordingly, this cause is reversed and remanded for a new trial.
ERVIN and BARFIELD, JJ., concur.