NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

CHRISTIE L. SOTO, as Personal )
Representative of the Estate of Jose H. )
Medina, Deceased, )
)
Appellant, )
)
v. )       Case No. 2D13-1620
)
McCULLEY MARINE SERVICES, INC., a )
for profit Florida Corporation; and PINE )
ISLAND TOWING COMPANY, a for )
profit Florida Corporation, )
)
Appellees. )
_____ )

Opinion filed December 16, 2015.

Appeal from the Circuit Court for Manatee
County; Diana L. Moreland, Judge.

Bard D. Rockenbach of Burlington &
Rockenbach, P.A., West Palm Beach; and
Tiffany M. Faddis and Eric H. Faddis of
Faddis & Faddis, P.A., Orlando; and
Steven M. Johnson and Marc R. Williams of
Johnson & Williams, P.A., Orlando, for
Appellant.

Jules V. Massee, Robert B. Birthisel and
Erin M. Dubois of Hamilton, Miller &
Birthisel, LLP, Tampa, for Appellees.

ALTENBERND, Judge.

Christie L. Soto, as personal representative of the Estate of Jose H. Medina, appeals a final judgment in favor of McCulley Marine Services, Inc., and Pine Island Towing Company (the Defendants) in a wrongful death action. At trial, the Estate argued that Mr. Medina's drowning on July 4, 2009, was caused by the negligence of these defendants when their captain moored a tugboat and a barge to a dock in Longboat Pass in a configuration that allegedly caused the currents within the pass to suck Mr. Medina under the vessels despite his use of a life jacket. During the trial, the court answered a juror's question by informing the jury that the captain had not received a citation from an officer of the Florida Fish and Wildlife Conservation Commission (FWC) for his conduct. It is well established that the failure to receive a citation is not admissible in a negligence action. See, e.g., Moore v. Taylor Concrete & Supply Co., Inc., 553 So. 2d 787, 790-91 (Fla. 1st DCA 1989) (marshaling cases); Charles W. Ehrhardt, Ehrhardt's Florida Evidence, § 403.1 at 227-29 & 228 n.27 (West's Fla. Prac. Series 2015 ed.) (same). After a full review of the record, we conclude that this error requires this court to reverse the judgment and remand for a new trial.

## I. THE FACTS

In 2009, Manatee County had an ongoing, permitted program to establish artificial reefs in the Gulf of Mexico offshore from the beaches at the City of Bradenton Beach. The program required large quantities of concrete debris and other materials to be transported by barge to the desired locations. To facilitate this activity, Manatee County had established a staging area with a dock at the southeast end of Anna Maria Island, essentially just inward from the bridge over Longboat Pass. This staging area

was in or immediately adjacent to Coquina Beach and Bayside Park. Especially on weekends and holidays, that park is used by many people who are seeking to enjoy the water. In 2009, it was particularly popular for people who used jet skis or personal watercraft.

The Defendants were engaged by Manatee County[1] to help build the artificial reefs, and it is undisputed for purposes of this appeal that the Defendants were legally responsible for any negligence of the captain who was in command of the tugboat and the barge involved in this project. In 2009, the Fourth of July fell on a Saturday. The Defendants did not wish to work over the long holiday weekend. As a result, the captain moored the tugboat and barge adjacent to the dock in the staging area. The sixty-five-foot tugboat and equally long barge were tied together and moored in a manner that caused them to jut outward into the pass.

Longboat Pass is known to have tidal currents that can be quite strong. On the afternoon of July 4, when the tidal currents were allegedly strong, Mr. Medina was operating a jet ski near the tugboat and barge. The jet ski stalled and he could not restart it. His friends came to help, but Mr. Medina became separated from the jet ski. Apparently, no one witnessed him drown, but he was found under the barge with his life jacket still on. The Estate claims that the current, enhanced by the configuration of the

---

[1]The Estate initially brought this negligence action against several defendants, including Manatee County. The trial court entered summary judgment in favor of Manatee County, and this court affirmed that judgment in Soto v. McCulley Marine Services, Inc., 173 So. 3d 898 (Fla. 2d DCA 2015) (table decision). Ultimately, the only defendants remaining by the time of trial were McCulley Marine and Pine Island Towing.

tugboat and barge, caused Mr. Medina to be swept under the vessels despite his use of the life jacket.

The accident was investigated by the Florida Fish and Wildlife Conservation Commission. The investigating officer did not cite the Defendants with any violation of law. Prior to trial, the court granted a motion to exclude evidence of this fact.

The Estate had at least three theories of negligence at trial. The Estate's best theory was that this experienced, licensed captain knew or should have known that his tug boat and barge were moored in an area where jet skis would be used extensively over the holiday weekend by relatively inexperienced jet skiers. He should have appreciated that the Defendants' vessels were moored in a configuration that would increase the speed and force of the current, creating a hidden danger for any jet skier who might enter the water. The Estate claimed that the captain should either have anchored the vessels outside the pass for the weekend or should have provided adequate warnings for the jet skiers to keep a safe distance from the vessels. The Estate maintained that these acts or omissions negligently contributed to Mr. Medina's death. The Estate alternatively argued that the captain had negligently obstructed the waterway and contributed to Mr. Medina's death because he had violated a U.S. Coast Guard regulation, 33 C.F.R. § 162.65 (2009), when he moored the tugboat and barge at the staging dock. The Estate also tried the case on the theory that the captain had been negligent in failing to "sufficiently crew" the vessels while they were moored at the staging dock on the Fourth of July.

During the Estate's case in chief, one of the jurors submitted several questions. One question asked: "Did [the FWC officer] or any other law enforcement officer write a ticket to the captain or owner of the vessel citing the law that was broken?" The Defendants wanted the trial court to answer this question and claimed that the Estate had opened the door to this evidence by attempting to prove that the Defendants had violated 33 C.F.R. § 162.65. The trial court agreed and, over the Estate's objection, informed the jury that the answer to the question was "no." The Estate moved for a mistrial, arguing that the court's answer to this question constituted prejudicial error that denied the Estate's right to a fair trial and could not be cured with any instruction. The trial court denied the motion.

Thereafter, in closing argument, the Defendants maintained that the absence of a citation supported their argument that they did not cause or contribute to this accident. Counsel for the Defendants argued that:

> There is no law to suggest that the captain must behave any differently from the 4th of July in mooring that vessel there than he has to behave at any other time of the year.

> The vessel w[as] lawfully moored there. [The captain] didn't [violate] any provisions of this law. The judge instructed earlier that he received no citations for being there under the provisions that we'[v]e discussed in th[e] code of federal re[gulation]s . . . .

Following deliberations, the jury returned a verdict answering in the negative the single question: "Was there negligence on the part of Defendants McCulley Marine Services, Inc., and Pine Island Towing Company[,] which was a legal cause of death of Jose H. Medina?" The trial court entered a final judgment on this verdict, and the Estate appealed.

## II. THE ESTATE DID NOT "OPEN THE DOOR" TO ADMITTING EVIDENCE OF WHETHER THE DEFENDANTS RECEIVED A CITATION

Given the large number of negligence cases that have arisen from automobile accidents, it is now very well established that evidence of a citation or lack thereof is inadmissible at trial.  See Eggers v. Phillips Hardware Co., 88 So. 2d 507, 507-08 (Fla. 1956); Diaz v. FedEx Freight E., Inc., 114 So. 3d 224, 226-27 (Fla. 5th DCA 2012); Moore v. Taylor Concrete & Supply Co., Inc., 553 So. 2d 787, 790-91 (Fla. 1st DCA 1989); Albertson v. Stark, 294 So. 2d 698, 699-700 (Fla. 4th DCA 1974).  The negligence standard employed by juries is not the same as the standard used by individual law enforcement officers when deciding whether to write a ticket.  Florida courts have repeatedly emphasized that the admission of such evidence constitutes prejudicial error, even in cases in which the trial court has given a curative instruction.  See, e.g., Hulick v. Beers, 7 So. 3d 1153, 1155 (Fla. 4th DCA 2009) ("Where fault is an issue, evidence of the presence or absence of a traffic citation will almost always constitute prejudicial error and warrant a mistrial," because "[c]ommon sense . . . tells us that to the average juror the decision of the investigating police officer . . . is very material to, if not wholly dispositive of, that juror's determination of fault on the part of the respective drivers." (quoting Albertson, 294 So. 2d at 699-700)); Galgano v. Buchanan, 783 So. 2d 302, 307 (Fla. 4th DCA 2001) ("Questions to a party or a witness, propounded by an adverse party, about whether traffic citations were issued will require that a mistrial be granted or that there be a reversal on appeal.").

We reject the trial court's conclusion that the Estate opened the door to this otherwise inadmissible evidence.  The Estate, in arguing that the Defendants were negligent because they violated a certain Coast Guard regulation, did nothing more than

- 6 -

a plaintiff might do in an automobile accident case in arguing that the defendant was negligent because he or she ran a stop sign or failed to obey some other traffic regulation. See, e.g., Shaver v. Carpenter, 157 So. 3d 305, 307 (Fla. 2d DCA 2014) (reversing judgment for the plaintiffs in a personal injury case in which the plaintiffs' theory was that the defendant was negligent because he violated the right of way and remanding for a new trial because the trial court allowed the investigating officer to testify that the defendant violated the right of way and the plaintiff did not). Arguing that a defendant violated a provision of law that is relevant to the determination of negligence simply does not open the door to admitting a law enforcement officer's decision on whether to issue a citation for that violation. Such evidence is particularly prejudicial when it comes from the trial court itself, as it did here.

This trial was long, and some of the theories were complex. It is unfortunate to require a new trial for a single error. We have carefully reviewed the long record. As quoted above, the Defendants' closing argument emphasized the court's statement to the jury that the captain received no citation. This was done in conjunction with an argument that "no law" suggests that "the captain must behave any differently" on the Fourth of July. But the law of negligence does require a person to take reasonable care in light of all of the circumstances. In this case, those circumstances did include the fact that the tugboat and barge would be surrounded by a large number of relatively inexperienced jet skiers on a holiday weekend. Under the applicable law, we conclude that this error requires a new trial.

Reversed and remanded.

KHOUZAM and SALARIO, JJ., Concur.