699 So.2d 757 (1997)
Ouriana GOUTIS, Individually and as Personal Representative of the Estate of Andreas Goutis, Deceased, and Vassiliki Goutis, Appellants,
v.
EXPRESS TRANSPORT, INC., a DIVISION OF F.V. MIRANDA, INC., and Pablo Luis Lewis, Appellees.
No. 95-1927.
District Court of Appeal of Florida, Fourth District.
September 3, 1997.
Rehearing and Rehearing Denied October 17, 1997.
*759 Donald T. Norton and Daniel D. Dykema of Cohen and Cohen, P.A., Hollywood, and Elliot H. Scherker and Alison Marie Igoe of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, for appellants.
Frank R. Gramling of Fertig & Gramling, Fort Lauderdale, for appellees.
Rehearing and Rehearing En Banc Denied October 17, 1997.
WARNER, Judge.
The appellants/plaintiffs below obtained a jury verdict of nearly 1.8 million dollars (less reduction for comparative negligence) in a wrongful death case. The appellees moved for a new trial which the court granted, determining that prejudicial comments in jury selection, opening statement, and closing argument necessitated a new trial. We reverse, holding that the statements complained of were either not objected to or were not error.
This case arises from the death of Andreas Goutis in a fatal accident on I-95 in Broward County. On the date of his death, Goutis was driving his truck north on I-95 when he hit a tractor-trailer owned by Express Transport that was parked in the middle lane of the highway. There were multiple disputes as to the cause of the accident. The plaintiffs presented testimony of eyewitnesses that the truck did not have its hazard flashers on or warning triangles on the road when the accident occurred. The plaintiffs further contended that there were defective conditions in the brake line on the truck caused by improper maintenance, whereas the appellees claimed that the brake line separated because of a sharp object piercing the brake line which prevented the driver from moving the truck off of the highway. The appellees also presented testimony that the driver had utilized his hazard flashers. The trial court granted a new trial based on a number of allegedly improper comments made by the plaintiffs' counsel, determining that the errors in each segment individually required a new trial. The standard for reviewing an order granting a new trial is one *760 of abuse of discretion, unless the ruling is grounded on a question of law, in which case the discretion in granting a new trial is drastically reduced. State Farm Mut. Auto. Ins. Co. v. Gage, 611 So.2d 39, 40 (Fla. 4th DCA 1992). In dealing with the grant of a new trial based on improper comment in closing argument, the second district has succinctly established the rule regarding the distinction between preserved error and unpreserved error:
As a general rule, a court's decision to grant a new trial based on preserved error is of "such firmness" that it should not be disturbed in the absence of a clear showing that its broad discretion has been abused. Cloud v. Fallis, 110 So.2d 669, 672-73 (Fla. 1959).... While much of the case law discussing this standard concerns new trials that were granted because the verdicts were contrary to the manifest weight of the evidence, this broad discretion standard also applies for other trial errors, including preserved error in an opponent's closing argument.
On the other hand, if a trial court grants a motion for new trial based on unpreserved error, then such error must be both pervasively prejudicial and fundamental. As explained in Wasden [v. Seaboard Coast Line R.R., 474 So.2d 825 (Fla. 2d DCA 1985)], on the issue of the pervasive, prejudicial nature of the error, the trial court receives the benefit of the broad discretion standard. On the issue of the fundamental nature of the error, the trial court is not accorded this broad discretion. Whether the error is fundamental is reviewed on appeal as a question of law. Wasden. Accordingly, an order granting a new trial on this basis will be affirmed "only if the error is, as a matter of law, fundamental."
Hagan v. Sun Bank of Mid-Florida, N.A., 666 So.2d 580, 587 (Fla. 2d DCA 1996) (footnote and some citations omitted). Thus, the trial court's discretion in granting a new trial is limited if the error is a question of law, and it is even more limited if it is based on unpreserved error which must amount to a fundamental error to warrant a new trial. Id. With these principles in mind, we address the trial court's rulings on the comments.

A. "GOLDEN RULE" ARGUMENT DURING VOIR DIRE
During voir dire, appellants' counsel learned that a female juror, Mrs. Gizzi, and her husband had a family business repairing mobile homes. The Goutises also ran a family restaurant together prior to Andreas' death. In questioning, appellants' counsel asked the juror about the business:
Mr. Dykema: Okay. If he did become disabled and couldn't do the repairs, what would you do with the business or what would you do with it?
Appellees' counsel objected that it was a hypothetical question, which objection the court sustained and told counsel he could rephrase the question. Mr. Dykema then asked, "Could you conduct this business as an ongoing enterprise without your husband?" Appellees' counsel then objected that counsel was "trying the case" and at side bar objected that the question was in the nature of a golden rule argument. After argument, the court agreed, sustained the objection, and denied the motion for mistrial. It should be noted that at this point in the trial, the jury did not know anything about the facts of the case other than that the Goutis' were suing because of an accident which killed Andreas.
In its order granting a new trial, the court found that the question was, in effect, a golden rule argument, calculated to encourage the jurors to place themselves in the plaintiffs' emotional and financial shoes; that it tainted the entire panel; and therefore a mistrial was appropriate. The court did not mention that it had denied the mistrial when the comment was made.
We disagree that the question to the juror was a golden rule type argument. While "`[a] golden rule argument suggests to jurors that they put themselves in the shoes of one of the parties, and is impermissible because it encourages the jurors to decide the case on the basis of personal interest and bias rather than on the evidence,'" Simmonds v. Lowery, 563 So.2d 183, 184 (Fla. 4th DCA 1990) (citation omitted), "`[t]o be *761 impermissible, the argument must strike at that sensitive area of financial responsibility and hypothetically request the jury to consider how much they would wish to receive in a similar situation.'" Id. (citation omitted); accord Metropolitan Dade County v. Zapata, 601 So.2d 239, 241 (Fla. 3d DCA 1992). The questioning of the juror did not ask the juror "how much" the juror would want to receive if placed in the plaintiffs' position. Indeed, the juror would have to speculate that Andreas was involved in a family business which couldn't run without him, since none of the facts were known at that point of voir dire. In addition, as the attorney pointed out to the judge, the juror could have responded that she was in charge of the business, and that it would run very well even if her husband was disabled. The question did not ask the juror to identify with Mrs. Goutis' personal circumstances. It asked what the juror's own personal circumstances were, which is the very reason for voir direto know whether something in the juror's personal experience is relevant to the issues to be tried in the case.
Even if this were a golden rule argument, in Cleveland Clinic Florida v. Wilson, 685 So.2d 15 (Fla. 4th DCA 1996), we receded from previous case law which applied a per se reversal test to such comments. Instead, we held that the harmless error test would apply. In ruling on the motion, the court relied on the pre-Cleveland Clinic case law. The court thus erred in determining that this comment necessitated a new trial. Moreover, we hold that the comment could not in any circumstance be deemed to be "highly prejudicial." Indeed, the trial court persuaded the plaintiffs' counsel to ask the juror whether the fact that she and her husband had a family business would pose a hardship if she sat as a juror. This was done with the intent of defraying any prejudicial effect of the questioning.

B. IMPROPER COMMENT DURING OPENING STATEMENT
In its order granting a new trial, the court listed five improper comments in opening statement which it stated merited a new trial. We discuss each in turn.
"Andreas was a pillar of the community. He was well liked and revered by customers, fellow church members and he was revered and loved by his family." Defense counsel objected that arguing that Andreas was a "pillar of the community" was prejudicial in a wrongful death case; the objection was sustained, although the court noted that it was a close question. In granting a new trial, the trial court stated that the comment was not supported by evidence introduced at trial and was an "unctuous tribute to character of the Plaintiff," proscribed in Walt Disney World Co. v. Blalock, 640 So.2d 1156 (Fla. 5th DCA), rev. dismissed, 649 So.2d 232 (Fla.1994). Further, it was in violation of the Rules of Professional Conduct of the Florida Bar, Rule 4-3.4(e), as a comment neither supported by the evidence nor relevant.
The only part of the comment for which objection was properly preserved was that Mr. Goutis was a pillar of the community. Blalock, cited by the court in support of its findings in the order granting a new trial, is distinguishable from this case, as Blalock involved a thumb injury to a child on a Disney World ride, not a wrongful death suit where the loss of companionship of the husband and father was relevant in establishing damages to the claimants. See, e.g., § 768.21, Fla. Stat. (1995). The decedent's position in the community may be relevant to the spouse or children's loss of his companionship, e.g., that they took pride in his community accomplishments and his stature in the community made them feel a greater sense of personal loss. Cf. Dina v. Seaboard Air Line Ry. Co., 90 Fla. 558, 106 So. 416, 416-17 (1925) (in considering measure of damages for wrongful death of spouse, recovery may be had for "[t]he station in society which [the spouse's] past history indicates that he would probably have occupied and his reasonable expectations in the future....").
Moreover, we cannot say that such a comment is a violation of Rule 4-3.4 of the Rules Regulating The Florida Bar, which provides:
A lawyer shall not ... in trial, allude to any matter that the lawyer does not reasonably *762 believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused.
Appellants' attorney made this comment in opening statement. While appellant presented no evidence regarding the decedent's community status, it is unlikely that he would put on such evidence since the sustained objection indicated that the evidence would be prejudicial. That doesn't mean that at the time he made the statement the attorney did not reasonably believe it both to be relevant and supportable by admissible evidence. We find no violation of Rule 4-3.4(e) which would require the sanction of granting a new trial.
"We asked for maintenance records; they couldn't produce any." Defense counsel objected, claiming that this accusation of hiding evidence could not be cured and moved for a mistrial. The court deferred ruling.
The dispute about maintenance records seems to arise from a misunderstanding or failure to cooperate between the parties. The appellants made a request for production of maintenance records, to which the appellees answered that the records would be furnished upon receipt. Appellants then filed a re-notice of taking deposition duces tecum requesting that the deponent bring the maintenance records with him. According to defense counsel, the deponent brought the records with him but appellants' counsel never asked for them, although neither the deponent nor his counsel notified the appellants' attorney that they had them at the deposition. After appellant's attorney made the comment in opening statement, records of repairs, a 90-day inspection of the tractor, and the driver checklists for a ten-day period prior to the accident were turned over to the appellants, and the appellants agreed not to make any further argument as to the defendants' failure to produce maintenance records. These records were introduced into evidence. In fact, the evidence of maintenance or lack thereof permeated throughout the trial, the defense claiming that there was no evidence that a lack of maintenance either caused or contributed to the accident. The defense repeatedly raised its concern over the records and their relevance, and the trial court even offered to give a curative instruction if necessary, yet none was requested. The trial court denied a motion for directed verdict on the issue of negligent maintenance.
The comment in opening statement was true as far as the appellants knewthey had requested the documents, and the documents had not been produced for them. Unlike the argument in Emerson Electric Co. v. Garcia, 623 So.2d 523 (Fla. 3d DCA 1993), or George v. Mann, 622 So.2d 151 (Fla. 3d DCA 1993), the appellants did not imply that the appellees had intentionally concealed evidence. Their purpose was to show that maintenance records did not exist because the trucking firm did not conduct proper preventative maintenance. At least, that is what their questioning of witnesses at trial was designed to elicit. In fact, routine maintenance records did not exist because the appellees did not follow a regular maintenance schedule. The records that did exist were entered into evidence. There was no error in the appellants' attorney's statement, and even if there was, defense counsel did not request a curative instruction which could have removed any improper inferences regarding the statement. The trial court erred in predicating the grant of a new trial on it.
"Speculation includes a piece of road debris could have come up and broken it."
"In your common sense you will deem that this brake line was neglected and by its appearance seems neglected."
"The evidence will clearly indicate that Mr. Pytel [appellees' expert] is ignoring safe practices on the roadway." The trial court found that these comments cumulatively amounted to improper argument in that they had no evidentiary support and injected plaintiffs' counsel's personal opinions. We find, however, that the objections at trial were not specific enough to preserve the comments for review, particularly *763 the grounds on which the trial court found them wanting. As they do not constitute fundamental error, they could not be grounds for a new trial. Hagan. Moreover, we do not consider them error in any event. The purpose of opening statement is to outline what the attorney expects the evidence will show. In considering those statements as error, sufficient to warrant the granting of a new trial, the trial court cannot simply determine that no evidence was introduced upon a particular issue and therefore hold that the opening statement was improper. Frequently, attorneys make statements in opening that they reasonably expect the evidence to support, only to have witnesses change their testimony or become unavailable. Such comments are not reversible error.
In the instant case, the statements were not without evidentiary support. The appellants' attorney told the jury that only speculation could show what happened to the truck's brake line. It was his position that the defense expert could only rely on speculation as there was no specifically identified cause of the damage to the brake line. It was the defense expert's conclusion that "some" sharp object must have hit the line. Further, the appellants' introduction of the maintenance reports, showing that the maintenance checklist did not include a check for air lines, supports an inference that the brake lines were being neglected. In addition, the appellants' attorney expected the defense expert to testify about safe practices on the roadway. During cross-examination of the expert, the attorney attempted to elicit a response as to whether the expert thought that a tractor-trailer sitting in the middle of an expressway should be removed "at all costs." The defense objected, and the trial court sustained the objection. Thus, the appellant's attorney was unable to pursue a line of questioning on the very subject of his opening statement. It cannot be error in opening statement to outline the case which counsel anticipates proving through the evidence and witnesses, even though circumstances change before the end of the trial. Cf. Travieso v. State, 480 So.2d 100, 103 (Fla. 4th DCA 1985).
Having found that the above comments on opening statement were not preserved and were not error as a matter of law, we conclude that the trial court erred in predicating its order granting a new trial on errors in opening statement.

C. IMPROPER ARGUMENT DURING CLOSING
The trial court considered a string of allegedly improper comments during closing argument. Several of these were statements preceded by such phrases as "I would propose" or "I submit." Based on these phrases, defense counsel argued that appellants' attorney was improperly expressing his personal opinion in violation of Rule 4-3.4. We, however, agree entirely with Judge Cope's opinion in Forman v. Wallshein, 671 So.2d 872 (Fla. 3d DCA 1996), and his quotation from Steven Lubet, Modern Trial Advocacy Analysis and Practice 432-33 (1993):
It is improper and unethical for an attorney to "assert personal knowledge of facts in issue ... or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused."
The purpose of the rule is twofold. First, it prevents lawyers from putting their own credibility at issue in a case. The jury is required to decide a case on the basis of the law and evidence, not on their affinity for or faith in a particular lawyer. While every advocate strives to be trusted and believed, it subverts the jury system to make an overt, personal pitch.
Moreover, a statement of personal belief inevitably suggests that the lawyer has access to off-the-record information, and therefore invites the jury to decide the case on the basis of non-record evidence. Consider the following:
I have investigated the case thoroughly. I have spent hours with my client, and I have visited the scene of the accident. I could tell, just from talking with her, how seriously she has been injured. Believe me, I would not take up your time if my client were not telling the truth. I *764 have handled many other cases of this type, and I can honestly say that this is one of the strongest plaintiff's cases that I have ever seen.
Here, the lawyer has not merely asked for the jury's confidence. Counsel has impliedly asked the jury to enter a verdict on the basis of out-of-court interviews and previously tried cases.
The rule against statements of personal belief is an important one. It should not be demeaned by a too-literal interpretation. It is difficult to purge your speech entirely of terms such as "I think" or "I believe." While good lawyers will strive to avoid these terms, it is not unethical to fall occasionally into first person references. Similarly, it is unnecessary to preface every assertion with statements such as "the evidence has shown," "we have proven," or the like.
671 So.2d at 875 (emphasis in original). The comments made in this closing argument do not put the lawyer's credibility on the line, nor do they suggest that the attorney has access to additional information which he is inviting the jury to consider. Instead, the use of "I would propose" or "I submit," in this case, merely reflects ordinary patterns of speech, which are not unethical.
During closing, appellant's attorney stated, "The evidence is absolutely lacking in this case to support those opinions of Mr. Kreft [appellees' expert]. They are pure groundless speculation." In granting a new trial, the court stated that these comments expressed a personal opinion regarding the credibility of a witness which was improper. However, it is permissible for an attorney to comment on the credibility of a witness, for example by calling the witness a liar, when it is with reference to the testimony given and the attorney is merely drawing a conclusion from the evidence. Craig v. State, 510 So.2d 857, 865 (Fla.1987); Forman v. Wallshein, 671 So.2d 872, 874 (Fla. 3d DCA 1996). Here, telling the jury that the opinions were based upon groundless speculation was simply commenting upon the evidence presented.
The trial court also took the appellants' attorney to task for telling the jury, "I submit that the negligence of the Defendants in this case was 95% of the cause of the accident." The objection of the defense was not that appellants' attorney gave his opinion as to the percentage of negligence but that it was proceeded by "I submit." Counsel did not object when the phrase was repeated with "The evidence ... shows." Thus, the defense waived any specific objection to appellants' comment on the percentage of negligence. But, in any event, suggesting a percentage of negligence is not objectionable as it is a conclusion based upon the evidence before the jury. What's more, attorneys have observed this practice as unobjectionable ever since comparative negligence was introduced. It is not error. And we do not read Moore v. Taylor Concrete & Supply Co., 553 So.2d 787 (Fla. 1st DCA 1989), relied on by the trial court, to state that it is error.
The remaining comments considered by the trial court to constitute prejudicial error were not preserved for review. Although the trial court granted defense counsel a standing objection as to his claim that plaintiffs' counsel's use of "I think" and "I submit" was injecting counsel's personal beliefs into the case, we agree that the standing objection was not sufficient to preserve an objection to statements other than those specific types to which he objected, namely the "I submit" or "I think" statements. In addition, standing objections are for matters where counsel raises an objection which the trial court continually overrules. Thus, knowing that the objection will not be sustained, a standing objection prevents the continual interruption of the trial. However, the trial court sustained defense counsel's objections. A standing objection should not be used to allow counsel continually to perpetuate an error. Of course, in the instant case we have determined that the statements complained of ("I think" or "I submit") were not error at all.
The remaining comments discussed by the trial court were not preserved through the standing objection. They are also not fundamental error. Therefore, the trial court abused its discretion in granting a new trial based on these comments.
Based upon the foregoing, we conclude that either the comments upon which the trial court granted the new trial were not *765 error as a matter of law or objection to them was not properly preserved. None of the comments amounted to fundamental error. Therefore, the trial court erred in granting a new trial.
While we stressed in Bellsouth Human Resources Admin., Inc. v. Colatarci, 641 So.2d 427 (Fla. 4th DCA 1994), that we must discourage lawyers from engaging in improper argument, the hard part may be in determining what is in fact improper. Bellsouth was an example of highly improper argument which drew into trial matters that were wholly unconnected to the litigation in a highly dramatic fashion. There is no comparison between the improper argument in that case and the comments made in the present case. We do not in any sense retreat from Bellsouth. Instead, both the courts and the legal profession must recognize the overall purpose to be achieved. Lawyers should argue forcefully for their clients from the evidence presented, and they should be allowed to draw conclusions from that evidence. The overly technical application of "rules," which we see in this case, destroys both the purpose of the rule and fails to account for the substance and purpose of closing argument.
We reverse and remand for reinstatement of the jury verdict.
KLEIN, J., and HAZOURI, FREDERICK A., Associate Judge, concur.