(219 P.3d 1231)

No. 100,470

STATE OF KANSAS, *Appellee*, v. RICARDO F. RIVERA, *Appellant*.

Opinion filed November 25, 2009.

*Heather Cessna,* of Kansas Appellate Defender Office, for appellant.

*Bradford L. Williams,* assistant county attorney, *Matthew W. Ricke,* county attorney, and *Steve Six,* attorney general, for appellee.

Before MALONE, P.J., PIERRON and LEBEN, JJ.

LEBEN, J.: Ricardo Rivera appeals his conviction for two counts of rape, raising several claims of error: (1) that the district court relieved the State of its burden to prove that the rape took place in Kingman County, (2) that the district court failed to make the State specify which actions it relied upon for each rape charge, resulting in the possibility of a nonunanimous jury verdict, (3) that the district court failed to give Rivera a new attorney after a conflict arose with the attorney who represented him at trial, and (4) that prosecutorial misconduct tainted the jury trial. After careful review of the record, we find no error.

The State charged two separate rapes based on events occurring in a rural area and different acts taking place at a residence in Kingman. We find that the State presented the two events in a way that left no real possibility of a nonunanimous verdict. And while the victim's testimony left some question regarding the exact rural location at which one rape occurred, the district court's somewhat inconsistent instructions on the State's obligation to prove venue could not have reasonably misled the jury given the evidence in this case. The district court held a hearing before trial on Rivera's motion for new counsel, and the court's decision that the existing attorney could continue to represent Rivera was reasonable. Finally, we find no prosecutorial misconduct in this case; the prosecutor's statements that Rivera complains about were fair comment on the evidence presented.

I. The Trial Court's Jury Instructions on Venue, Though in Error, Do Not Require Reversal.

The State's evidence told of two rapes. One occurred during a stop as the victim was driving on rural roads with Rivera as a passenger, and the other occurred at the victim's residence in Kingman. The victim indicated that she hadn't had a good sense of direction as she had tried to drive Rivera from Kingman to his home in Murdock. So the State asked the district court to give the jury an instruction based on K.S.A. 22-2604, which provides that when a crime is committed so near the boundary between two counties that it can't be readily determined in which county the crime occurred, the State may prosecute it in either county. The district court gave that instruction—over Rivera's objection—in addition to a typical instruction on the elements of the offense that said the State must prove that each rape occurred in Kingman County.

On appeal, Rivera contends that the State was required to prove, beyond a reasonable doubt, that the crime took place in Kingman County. Rivera argues that the special venue instruction lessened the State's burden. The State counters that the special venue instruction is authorized by K.S.A. 22-2604 for cases like this one.

We will set out the full instructions given by the district court on this question because they are inconsistent with one another. In Instruction No. 4, the district court gave a standard instruction, based upon a pattern jury instruction, PIK Crim. 3d 57.01, for the elements of the rape charge:

"The defendant is charged with the crime of rape in Count 1. The defendant pleads not guilty.
  "To establish these charges, each of the following claims must be proved:
  1. That the defendant had sexual intercourse with [the victim];
  2. That the act of sexual intercourse was committed without the consent of [the victim] under circumstances when:
      a. She was overcome by force or fear; and
  3. That this act occurred on or about the 26th day of August, 2007, in Kingman County, Kansas."

Thus, in Instruction No. 4, the district court told the jury that the State had to prove that the crime took place in Kingman County.

But in Instruction No. 9, the district court told the jury that when it couldn't be readily determined where a crime near the county boundary had occurred, the State could prosecute the case in either county: "Where a crime is committed on or so near the boundary of two or more counties that it cannot be readily determined in which county the crime was committed, the prosecution may be in any of such counties."

When an instruction is given over the defendant's objection, appellate courts must review the instructions as a whole. We do not reverse based on an instructional error if the instructions as a whole fairly state the law as applied to the facts in that case and the jury could not reasonably have been misled by them. As a general matter, errors that do not actually prejudice the defendant's substantial rights do not require reversal if substantial justice has been done. *State v. Dixon*, 289 Kan. 46, 67, 209 P.3d 675 (2009).

In Rivera's case, whatever the law may be, the existence of an instruction error seems apparent because the two instructions we've quoted are inconsistent. As stated in Instruction No. 4, the State had to prove that the rape occurred in Kingman County. So why did the jury need to know that the State could bring the case either in Kingman County or a neighboring county if was difficult to determine in which county the rape had occurred?

To sort this out, we first need to identify several concepts that have intersected in these instructions. Instruction No. 4 is what we generally call the elements instruction, which sets forth the elements that the State must prove to obtain a conviction for the specific crime charged. But our usual nomenclature is actually a bit imprecise here because the last item included in that elements instruction—that the crime took place in Kingman County, Kansas—is not actually an element of the crime.

Crimes are defined in Kansas by the legislature, and it has defined rape in K.S.A. 21-3502. That statute contains no required element regarding where the crime took place.

Beyond the elements, though, two other requirements are key to prosecuting someone for a crime: jurisdiction and venue. The court must have personal jurisdiction over the defendant and subject-matter jurisdiction over the crime. And venue must be proper,

meaning that the case is being tried in the correct court. The issue now before us centers around this venue requirement.

Like many states, Kansas has a venue-related provision in its state constitution. Section 10 of the Bill of Rights of the Kansas Constitution provides that the accused in a criminal case is entitled to "a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." Since Kansas selects jurors from within each county, the net result is that unless the defendant waives this right, see, *e.g.*, K.S.A. 22-2616, a defendant's trial must occur in the county in which the crime was committed. See *Addington v. State*, 199 Kan. 554, 559-60, 431 P.2d 532 (1967). That rule has also been placed in a statute, K.S.A. 22-2602, which requires that a case be prosecuted "in the county where the crime was committed" unless otherwise provided by law.

But that rule is subject to some exceptions. One such exception is found in K.S.A. 22-2603, which allows the trial in either of two counties when two or more acts are required to commit an offense and at least one of them occurs in each county. The Kansas Supreme Court considered the constitutionality of that exception in *Addington*. The court concluded that Section 10 of the Kansas Bill of Rights brought with it certain common-law concepts, including the established rule now reflected in K.S.A. 22-2603 that when an offense occurred partly in two counties, the trial can be in either county. Thus, the *Addington* court held that the statute, which was an identical predecessor to K.S.A. 22-2603, was constitutional. Our Supreme Court has also noted that exceptions like the ones found in K.S.A. 22-2603 and K.S.A. 22-2604 are based on the common-sense notion that a criminal should not escape punishment because the crime's exact location was concealed. *State v. Grissom*, 251 Kan. 851, 889, 840 P.2d 1142 (1992).

These venue provisions are considered jurisdictional in Kansas. Thus, "the prosecution of an accused, over his objection, in a local jurisdiction other than that fixed by the legislature is void." *Addington*, 199 Kan. 554, Syl. ¶ 11. Other decisions have referred to the proof of the proper venue for trial as a jurisdictional fact that must be proved by the State in every case, a fact that the jury must

determine. *State v. Hunt*, 285 Kan. 855, 859, 176 P.3d 183 (2008); *State v. Pencek*, 224 Kan. 725, 729, 585 P.2d 1052 (1978).

Apparently because Kansas law requires that the jurisdictional facts supporting proper venue be proved in every case, the committee that prepares pattern jury instructions has included venue as one of the elements of each offense. Thus, even though it isn't strictly an element of the offense, it is, as a practical matter, handled as if it were. And as far as we can determine, the committee has not provided any comments on how to modify that portion of the elements instruction if a situation like the one in *Addington* is encountered.

With these concepts in mind, let's now return to Rivera's case. The district court gave the standard elements instruction, which included the requirement that the crime must have taken place in Kingman County. Neither the State nor Rivera suggested any modification to that instruction. The district court also gave a separate instruction, based on K.S.A. 22-2604, telling the jury that a case may be prosecuted in either of two counties when its commission was so near the county line that it can't be readily determined where it was committed. The State requested that instruction; Rivera objected to it.

The State requested the instruction because the defense had spent considerable time in cross-examination of the victim about where the country rape had taken place. Rivera's attorney agreed that the statute, which was mirrored in the instruction, was "a correct statement of the law," but he said the instruction wasn't needed because "the jury can figure out what county it occurred in." The district court asked whether he "intend[ed] to argue that the evidence is lacking as to where this occurred," and Rivera's attorney admitted, "Well, that could happen, yes." The district court ruled that because Rivera's attorney had focused on the victim's uncertainty about the location in cross-examination, "it's appropriate to include this instruction . . . [s]o that the jury can draw whatever conclusions they want to draw about the appropriateness of the prosecution as to the out of town series of facts."

The district court's instructions were in error because Instruction No. 9, if it has any application to Rivera's case, contradicts

Instruction No. 4. Instruction No. 4 says quite clearly that the crime must have been committed in Kingman County, while Instruction No. 9 offers additional possibilities. We recognize that a jury is supposed to consider all of the instructions together and try to harmonize them. A juror might conclude that Instruction No. 9 was supposed to modify Instruction No. 4 so as to allow the crime to have been committed either in Kingman County or its neighboring county. That apparently was the district court's intention. But that's a pretty confusing way to express that concept to lay jurors.

We have no quarrel with the committee that has drafted the pattern instructions in its conclusion that it makes sense to include the required jurisdictional facts for venue as part of the elements instruction for each crime charged. But when one of the exceptions to prosecution in the single county in which the crime was committed applies, the district court should amend the elements instruction to tell the jury what jurisdictional facts must be proved.

Here, for example, the last portion of the elements instruction given as Instruction No. 4 could have been revised this way to reflect the impact of K.S.A. 22-2604:

That this act occurred on or about August 26, 2007, either (a) in Kingman County, Kansas, or (b) in a neighboring county if you find that the crime was committed so near the boundary of Kingman County that it cannot be readily determined in which county the crime was committed.

By doing so, the jury would have been told exactly what the State had to prove. District courts should use pattern instructions when they are applicable, but they also should modify them when a change is needed to make them accurate for a specific case. *Dixon,* 289 Kan. 46, Syl. ¶ 10. But a modification of the standard elements instruction is called for in situations that involve jurisdictional facts other than the general one in which the crime occurred within the county of trial.

The Kansas Supreme Court dealt with a similar situation in *Hunt.* The State had charged the defendant with murder. The body had been found in Crawford County, but the victim had last been seen in neighboring Bourbon County. When an act causes a death

in one county but the death occurs in another county, the prosecution may be in either county under K.S.A. 22-2611. That statute also provides that death is presumed to have occurred in the county where the body was found. Thus, under K.S.A. 22-2611, the act of murder takes place in both the county in which a person fatally injures another and in the county where death occurs, but a jury may presume in the absence of other evidence that death took place where the body was found. 285 Kan. at 860, 864. The *Hunt* opinion concluded that the jury should have been instructed that, to convict the defendant, it must find that the murder occurred in Crawford County and also instructed that it's ordinarily presumed that death occurred in the county where a body is found. 285 Kan. at 864. Our ruling is consistent with *Hunt* in holding that the jury should have been given an instruction about the specific venue rule at issue.

Even though the instruction given to Rivera's jury was somewhat in error, we conclude that reversal is not required because the jury could not possibly have been misled. To convict Rivera, under any understanding of the instructions, each juror must have concluded either that the crime occurred in Kingman County or that it took place so near the county line that it couldn't be readily determined in which county the crime took place. And in either of those situations, if found by the jury, K.S.A. 22-2604 squarely authorized prosecution of Rivera in Kingman County.

Although K.S.A. 22-2604 permits Rivera's prosecution in Kingman County, the evidence presented to the jury also strongly suggests that the crime did take place in Kingman County. The victim said that she was trying to take Rivera back to his residence in Murdock; she also said that the furthest distance they drove was to Rago. We can readily take account of the location of Kansas towns. See *Ehrsam v. Borgen,* 185 Kan. 776, 778, 347 P.2d 260 (1959). Murdock is about 9 miles east and 2 miles south of Kingman; Rago is about 1 mile east and 13 miles south of Kingman. From Rago, it's still about 4 miles further south to reach the county line; from Murdock, it's still about 6 miles further east to reach the county line. As jurors from Kingman County would have known, her testimony didn't appear to make it at all likely that she had left

Kingman County even though she said that she wasn't sure of her directions on the country roads.

But even if the parties did cross the Kingman County line before the rural rape took place, K.S.A. 22-2604 still authorized prosecution in Kingman County. Rivera's argument on appeal is that even though K.S.A. 22-2604 allows prosecution in either county, the State still must prove "that the crime occurred with the county[] because it is an element of the crime." On this point, Rivera confuses the proof of the jurisdictional fact of venue with the actual elements of rape. Where the crime took place is not an element of rape under K.S.A. 21-3502. It's simply a jurisdictional fact that must be proved in compliance with the general venue statute, K.S.A. 22-2602, and the exception applicable in Rivera's case, K.S.A. 22-2604. The State's evidence met its burden of proof as to the jurisdictional facts of venue in Rivera's case.

We note that Rivera has not raised any claim, either before the district court or on appeal, that K.S.A. 22-2604 is unconstitutional as beyond the scope of Section 10 of the Kansas Bill of Rights. While the *Addington* case determined that a similar provision, the predecessor to our current K.S.A. 22-2603, was within the common-law understanding incorporated into Section 10 of the Kansas Bill of Rights, we are not aware of any Kansas appellate decision that has considered the constitutionality of K.S.A. 22-2604, and we express no position on that question. See 22 C.J.S., Criminal Law § 181.

## II. No Problem Exists with the Unanimity of the Jury Verdict.

Rivera next claims that because the victim said that sexual intercourse started, stopped, and restarted at each of the two locations at which she said she was raped, there is a danger that the jury didn't unanimously agree about which of Rivera's acts constituted each of the two rapes. The district court did not give the jury a unanimity instruction, which tells the jury that it must agree upon the specific act that constitutes each crime. Jury verdicts must be unanimous, so a problem may arise when the State presents evidence of more than one act that could constitute one of the crimes charged.

When a question of juror unanimity is raised, our first task is to determine whether the case is indeed a multiple-acts case. If not, there's no unanimity problem. *State v. Voyles*, 284 Kan. 239, 244, 160 P.3d 794 (2007). The core question here is whether the defendant's conduct related to each charge is part of one overall act or represents multiple acts that are separate and distinct, such as when independent criminal acts have occurred at different times or when a later criminal act is motivated by a fresh impulse. *State v. Stevens*, 285 Kan. 307, 314, 172 P.3d 570 (2007).

The Kansas Supreme Court has applied the current tests for multiple-acts cases in two cases. In *Voyles*, two victims testified or made statements to relatives that could have supported the charging of a separate count of aggravated indecent solicitation and aggravated sodomy for encounters occurring at five different locations, all apparently on different days, for each girl. That evidence potentially indicated 20 different offenses, but the State charged only 8—2 counts of aggravated indecent solicitation and of aggravated sodomy per girl. Thus, *Voyles* held that it was a multiple-acts case: the jury could have amalgamated the testimony regarding acts at different locations to convict the defendant. 284 Kan. at 244. In *Stevens*, the court found that a charge of driving under the influence of alcohol was not a multiple-acts case even if alternative means of violating the statute were alleged. Rather, the driver engaged in a continuous course of conduct that wasn't motivated by a fresh impulse. 285 Kan. at 314. Whether a case is a multiple-acts case is a question of law that the appellate court considers independently. *Voyles*, 284 Kan. 239, Syl. ¶ 1.

A related legal question to the unanimity issue is multiplicity, where the State charges as multiple offenses what is really just one. See *State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006). Under the multiplicity doctrine, the State is forbidden in some cases from charging multiple counts of rape or attempted rape when seemingly separate acts have occurred within a short time or as a continuous course of events. See *State v. Dorsey*, 224 Kan. 152, 156, 578 P.2d 261 (1978) (State could not charge three different attempted rapes when less than an hour separated the acts). Because the issues of unanimity and multiplicity are closely related, some

panels of our court have considered the *Schoonover* factors for multiplicity when determining whether a case is a multiple-acts case. *E.g., State v. Schofield*, 2009 WL 2242424, at *2 (Kan. App. 2009) (unpublished opinion); *State v. Soriano-Garcia*, 2008 WL 142104, at *2 (Kan. App.) (unpublished opinion), *rev. denied* 286 Kan. 1185 (2008). Thus, in addition to the statement of the test from *Voyles* and *Stevens*, we may also consider whether the acts occurred at or near the same time, whether they occurred in the same location, whether an intervening event or a causal relationship existed, and whether a fresh impulse motivated the acts. *Schoonover*, 281 Kan. at 507.

To determine whether each charge against Rivera was a multiple-acts charge, we must review the testimony of the victim in greater detail. She said that Rivera came to her apartment in Kingman shortly after midnight and that he said that he was too intoxicated to drive home to Murdock. She agreed that he could sleep on the couch. When Rivera made sexual advances, she rebuffed them and offered to drive him home. He agreed, and they left in his car. At Rivera's request, she agreed to take back roads because he said he had an open case of beer in the backseat.

During the trip, Rivera made her stop twice. At the first stop, he got out to relieve himself but then made another unsuccessful advance. At the second stop, Rivera said he felt sick, and he leaned out of the car. After a few minutes, he sat up and pulled the keys out of the ignition. He then began to choke her, and the parties struggled in the car. She was unable to break his grip around her neck.

After a time, Rivera stopped choking her. He told her that they were going to have sex, and he told her to remove her pants. He then ordered her out of the car. He first tried to have intercourse on the trunk, but it didn't work. He then had sex with her on the hood of the car and later by the front car door. The victim said that the encounter lasted about an hour and that Rivera made her perform oral sex on him during that time. She eventually persuaded him to stop, and he told her to drive him back to her apartment. During the trip back, he threatened to kill the victim and her son if she reported the rape.

After the parties returned to Kingman, Rivera raped her again in her apartment. She said that this encounter lasted about half an hour. She said that intercourse stopped at one point because she told Rivera that she wanted to go find some lubricant (which she didn't have), but he quickly brought her back to the bedroom and resumed intercourse when she didn't return with the lubricant. Rivera eventually passed out at around 5 o'clock in the morning.

Rivera contends that although there were only two rape charges, the victim testified that Rivera forced her to have oral and vaginal sex several times over a 5-hour period in two different locations. He contends therefore that different members of the jury could have found separate acts for each of the rapes, thus presenting a multiple-acts case. The State argues that there were two separate incidents, one in a rural area when the car was stopped, and one at her apartment in Kingman.

Rivera essentially wants to require that the State choose which specific act it relies upon to support the rape charge at each location. Under this argument, the jury would need to parse each separate penetration and withdrawal. For example, the State would have to specify that its rape charge for the rural rape specifically charged vaginal penetration by force on the car's hood, not by the car's front door after Rivera moved the victim to a different position. We do not believe that Kansas law requires such a macabre exercise.

The acts were charged in two counts—one for conduct in rural Kingman County and one for conduct at the victim's Kingman apartment. Each of the counts stood alone; neither of them were multiple-acts counts under *Voyles*. All of the acts for one count occurred just outside Rivera's car, and all of the acts for the other count occurred in the victim's bedroom. While the victim said that the events at the car took about an hour in total, the events charged as rape (intercourse on the car's hood and near the car's front door) occurred in a fairly continuous sequence, generally interrupted only to change positions, at Rivera's direction, or to have the victim perform oral sex on him to allow him to gain or maintain an erection so that he could continue. Similarly, the events in the victim's bedroom occurred in a fairly continuous sequence, interrupted

only by her brief attempt to stall by looking for a lubricant product that wasn't in the apartment at all. While it may be arguable whether a fresh impulse existed once Rivera returned to the victim's apartment, that factor doesn't override the others we've noted in this case, and Rivera has not argued that the convictions were multiplicitous, *i.e.*, that he could only be charged with one rape for the entire sequence of conduct. Further, there was plenty of time for Rivera's initial impulse to attack the victim to subside on the trip back to her apartment. In sum, we conclude that the two counts of rape were supported by the evidence and that neither count was by itself a multiple-acts offense.

Our decision is consistent with two prior decisions from our court. In *State v. Villanueva*, 29 Kan. App. 2d 1056, 1064, 35 P.3d 936 (2001), *rev'd on other grounds* 274 Kan. 20, 49 P.3d 481 (2002), the defendant was convicted of rape. The State presented evidence that the defendant penetrated the vagina using his finger and, later, his penis. Penetration by either the finger or the penis constitutes sexual intercourse, which combined with lack of consent and a victim who is overcome by force or fear constitutes rape. See K.S.A. 21-3501; K.S.A. 21-3502. But even though penetration by either the finger or the penis would have been sufficient to prove rape, combined with the other evidence, our court rejected the defendant's claim that a unanimity instruction was needed because the attack "was one continuous event." 29 Kan. App. 2d at 1064. More recently, in *State v. Most*, 2009 WL 2371008, at *9 (Kan. App. 2009) (unpublished opinion), *rev. denied* 290 Kan. 1101, the defendant was convicted of two counts of aggravated indecent liberties with a child for having sexual intercourse with a child under the age of 16. Once again, the State's evidence for each of the two separate incidents was that the defendant had put his fingers and, later, his penis into the girl's vagina. Here too, sexual intercourse for the purposes of an aggravated-indecent-liberties charge may be found after penetration by either a finger or a penis. Our court again concluded that this was not a multiple-acts case: each charge represented a separate incident, even though the defendant penetrated the girl in each incident with both his fingers and his penis.

As a practical matter, the rules for determining when a case is a multiple-acts case are designed to ensure that the jury actually has agreed unanimously that the charged crime occurred. As Justice Carol A. Beier noted in an academic discussion of these rules, they must be "suitably pragmatic and protective" when applied to the myriad of cases that are encountered. See Beier, *Lurching Toward the Light: Alternative Means and Multiple Acts Law in Kansas*, 44 Washburn L.J. 275, 321 (2005). She also noted another case of interest, *State v. Staggs*, 27 Kan. App. 2d 865, 9 P.3d 601, *rev. denied* 270 Kan. 903 (2000). In *Staggs*, the defendant—charged with one count of aggravated battery—had both punched and kicked the victim during a fight. A panel of our court concluded that it wasn't a multiple-acts case because "the evidence established a continuous incident that simply cannot be factually separated." 27 Kan. App. 2d at 868. We agree with Justice Beier's comment that there need be no requirement that the State elect a specific act or the jury be given a unanimity instruction when "the acts at issue occur in a series over a very short time and form parts of a whole." 44 Washburn L.J. at 301. We believe that the factual situation of our case, like those found in *Villanueva* and *Most*, is such a case, not a multiple-acts case under *Voyles*.

During closing argument, the prosecutor told the jury that one count of rape was based on what occurred in rural Kingman County and that the other count was based on what occurred later at the victim's apartment in Kingman. The prosecutor accurately separated the two distinct incidents that were, indeed, separate for unanimity purposes. The State did not need to further elect, with respect to the rape by the car, whether it was prosecuting the attack on the car's hood or by the car's front door. Nor did the State need to further elect, with respect to the rape in the apartment, whether it was prosecuting the attack before—or after—the victim attempted to distract Rivera by searching for a lubricant that wasn't there.

III. The District Court Properly Denied Rivera's Motion for a New Attorney.

Less than a month after Michael Brown was appointed by the

court to represent Rivera, Rivera moved to discharge Brown because Rivera said the attorney hadn't responded to Rivera's communication requests. The district court held a hearing to consider the matter within 3 weeks of the motion's filing, and more than 3 months before the case was tried.

At that hearing, the district court asked Brown about the extent of Brown's contact with his client. In response to additional questions from the court, Brown said that he did not believe that communication had so broken down that he would be unable to represent Rivera effectively, and Brown said that he felt it was possible that other attorneys appointed to replace him would face similar problems. After hearing these comments, Rivera said he had nothing further to add. The district court denied the motion, noting:

- That Brown had filed a motion to reduce Rivera's bond that was heard by the court within a week of Brown's appointment;
- That Brown had promptly requested discovery materials from the State, and that Brown had forwarded that information to Rivera within 3 weeks of Brown's appointment; and
- That Brown had handled at least dozens of serious sex-offense cases.

Rivera contends on appeal that the district court should have dismissed Brown and that Rivera's right to be represented by "conflict-free" counsel was violated because Brown essentially argued against Rivera's motion to dismiss Brown.

A criminal defendant has a fundamental right to effective counsel under the Sixth Amendment to the United States Constitution, and that right applies to the states through the Fourteenth Amendment. *Cuyler v. Sullivan*, 446 U.S. 335, 344, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980). This right includes the right to representation free from conflicts of interest. *State v. Toney*, 39 Kan. App. 2d 1036, 1040, 187 P.3d 138 (2008).

When the trial court becomes aware of a possible conflict of interest between a defendant and his or her attorney, the court must make an inquiry to ensure that the defendant's Sixth Amendment right to counsel is protected. The court abuses its discretion if it doesn't do so. *State v. Vann*, 280 Kan. 782, 789, 127 P.3d 307

(2006). Here, the district court made an appropriate inquiry into Rivera's complaint. The district court first asked Rivera about his complaints. The court then required that Brown explain what sort of communications he'd had with his client. Brown did so without revealing confidential information. The court then gave Rivera a final opportunity to add anything he might want to before the court ruled. And the court reviewed the court file to determine when the attorney had been appointed, what actions the attorney had taken to date, and the timeliness of those actions. After reviewing that information, the district court was impressed by how quickly the attorney had obtained a hearing on a motion to review the defendant's bond: "To be in court within a week on that is very timely. Can't get in court much quicker than that." The court was also impressed by how quickly the attorney had obtained the relevant discovery materials and forwarded them to his client: "It doesn't get any quicker than that . . . ."

We find no error in the district court's denial of Rivera's motion to dismiss his attorney.

IV. The Prosecutor Did Not Commit Misconduct in Closing Argument.

Rivera's next argument is that the prosecutor committed misconduct in his closing argument to the jury. Rivera specifically argues that the prosecutor improperly bolstered the credibility of the victim and improperly expressed personal opinions during this segment of the closing argument:

"You told me—I asked you, the Court's instructed you, you would decide this case on what you hear [from the witness stand]. And everything you heard from there . . . backed up what [the victim] told you. I don't know where the beer went out of the back seat of the car. They didn't seize the car until the next, until late that night. I don't know who had access to the car. But I know one thing, [the victim] was on the hood of that car. That I know.

"And I want you, when you go back there, I want you to ask yourself a question. And that question is simply this. Why? Why would she tell you this story if it wasn't true?

". . . She's got nothing to gain. She's got nothing but embarrassment and guilty feelings . . . ."

We review allegations of prosecutorial misconduct in two stages. First, we must determine whether the prosecutor has committed

misconduct by exceeding the wide latitude given an attorney to argue the case based upon the evidence. Second, if we find misconduct, we must consider whether the misconduct prejudiced the defendant and denied him or her a fair trial. In making that determination, we consider whether the comments were gross and flagrant, whether they were motivated by ill will, and whether the evidence was so overwhelming that the comments probably had little effect on the jury's consideration of the case. *State v. McReynolds*, 288 Kan. 318, 323, 202 P.3d 658 (2009).

We are not entirely sure whether the prosecutor has gone beyond the wide latitude afforded for argument. The quoted comments were all in response to the defense attorney's closing argument, in which he said that the victim's story didn't "make any sense" and emphasized various potential pieces of evidence that the State hadn't brought before the jury or explained. Defense counsel questioned whether DNA evidence gathered from the hood, which showed a match to the victim, might simply have been there because she'd been around the defendant (who presumably had been around his car) or because she'd been around the car before. That led to the prosecutor's responsive argument that the "one thing" he knew in the case was that the victim had been on the car's hood. In his initial argument, the prosecutor had noted the DNA evidence that supported that claim as well as the photos of the hood that showed a pattern of dust that he also said supported the victim's testimony about what had happened on the car's hood.

The prosecutor's statement about what he knew seems to us merely the use of a figure of speech or rhetorical technique rather than an expression of knowledge based on the prosecutor's own personal investigation. In common speech, we often say, "I believe" or "I think" or even the stronger "I know" without actually trying to pass something off as our own independent knowledge. See *Goutis v. Express Transport, Inc.*, 699 So. 2d 757, 763-64 (Fla. Dist. App. 1997), *disapproved on other grounds by Murphy v. Int'l Robotic Systems*, 766 So. 2d 1010, 1031 (Fla. 2000); *Forman v. Wallshein*, 671 So. 2d 872, 874-75 (Fla. Dist. App. 1996). The prosecutor's discussion of whether the victim had any motive to lie

was in response to the defense attorney's closing argument. We also generally do not find prosecutorial misconduct requiring reversal in limited responses to the defendant's closing argument. See *State v. Murray*, 285 Kan. 503, 517, 174 P.3d 407 (2008).

But even if we find that the prosecutor went beyond the normal latitude afforded in closing argument, we conclude that it did not prejudice the defendant or deny him a fair trial. The comments were brief and made directly in response to the defendant's closing argument. We do not find them to have been gross or flagrant or motivated by ill will. And the evidence of guilt in this case was quite strong: the victim testified consistently with her past statements, and physical evidence corroborated her testimony. See *State v. Morton*, 38 Kan. App. 2d 967, 974, 174 P.3d 904, *rev. denied* 286 Kan. 1184 (2008) (finding no reversible error even though prosecutor may have improperly bolstered victim's credibility). We find no reversible error based on prosecutorial misconduct.

V. No Other Error Requires Reversal Here.

The defendant has raised two other issues on appeal, but neither has merit. First, he argues cumulative error. Since we have not found error at all, we find no cumulative error, either. Second, he argues that the district court violated his constitutional rights when it chose the aggravated sentence. Kansas guidelines give the district court three potential sentences to choose from: a standard sentence, a higher sentence (called the aggravated sentence), and a lower sentence (called the mitigated sentence). In Rivera's case, the district court picked the higher number for a longer sentence. Rivera argues that this is unconstitutional under *Cunningham v. California*, 549 U.S. 270, 166 L. Ed. 2d 856, 127 S. Ct. 856 (2007), but his argument was rejected by the Kansas Supreme Court in *State v. Johnson*, 286 Kan. 824, Syl. ¶ 5, 190 P.3d 207 (2008). We are of course bound by its decision.

The judgment of the district court is therefore affirmed.